**MID–AMERICAN FIRE & CASUALTY COMPANY, Appellee,**

v.

**BROUGHTON, Individually and as Administrator of the Estate of Kidd, Appellants.**

[Cite as *Mid–American Fire & Cas. Co. v. Broughton,*
154 Ohio App.3d 728, 2003-Ohio-5305.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 02 BE 54.

Decided Sept. 30, 2003.

Pelini & Fischer, Ltd., Craig G. Pelini and Cari Fusco Evans, for appellee.

Bordas & Bordas, P.L.L.C., Scott S. Blass and James B. Stoneking, for appellant.

---

DeGenaro, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Appellants, Judith Broughton and Amanda Kidd, appeal the decision of the Belmont County Court of Common Pleas, which granted summary judgment in favor of appellee, Mid–American Fire & Casualty Company, with Judith appealing both in her individual capacity and as administratrix of the estate of Jeremy Kidd. The two issues we must resolve are whether the trial court properly concluded that appellants were not entitled to a setoff for the funeral and grave marker expenses that a West Virginia court ordered the estate to pay in accordance with West Virginia law and whether it properly disposed of appellants' counterclaim.

{¶ 2} First, when an insured is seeking coverage under the underinsured motorist provision of an insurance policy, he is entitled to recover up to the policy limits less the amounts available for payment to the insured from insurance policies covering the tortfeasor. The estate in this case recovered $20,000 from the tortfeasor's insurer and the insurance policy covering the estate, and appellants provided for total underinsured motorist coverage of $300,000 per accident regardless of the number of insureds involved in the accident. Because the policy does not distinguish between the insureds when determining the amount of underinsured motorist coverage each is entitled to, it does not distinguish between them when determining what amounts are available for payment from other insurance sources. The trial court properly reduced Mid–American's limit of liability by the entire $20,000 the estate received from the tortfeasor's insurance company.

{¶ 3} Second, a trial court cannot grant summary judgment sua sponte, but it can dismiss a claim sua sponte if it is clear that the claimant cannot prevail. Appellants' bad faith claims were dependent upon their underlying contract claim. Once the trial court granted Mid–American's motion for summary judgment on that claim, appellants could not prevail on their bad faith claim. Thus, the trial

court properly dismissed that claim. For both of these reasons, the trial court's decision is affirmed.

## Facts and Standard of Review

{¶ 4} Jeremy Kidd was a passenger in a vehicle when the vehicle was involved in a one-car accident as a result of the driver's negligence. Jeremy died from the injuries he sustained in that accident. At the time of the accident, Jeremy was a resident of his mother's household, as was his sister Amanda. His mother, Judith, had a policy of insurance issued by Mid–American that provided uninsured motorists coverage to her and her family members in the amount of $300,000 for each accident. The tortfeasor was insured by a policy containing $20,000 of liability insurance.

{¶ 5} Judith was appointed the administratrix of Jeremy's estate. As such, she settled the estate's claim against the tortfeasor for $20,000, exhausting the tortfeasor's policy limits. That settlement was approved by a court, which ordered that a portion of that settlement be used to pay Jeremy's funeral expenses, the cost of his headstone, and reasonable attorney fees. The remaining amount was ordered to be held in trust until the final resolution of the estate.

{¶ 6} Subsequently, Mid–American filed a complaint for declaratory judgment and interpleader against Judith, both individually and as administratrix of Jeremy's estate. That complaint sought a declaration that the total potential coverage under the policy was $280,000. In response, Judith filed an answer and counterclaim. She argued Mid–American owed the estate more than $280,000 and alleged Mid–American breached its implied covenant of good faith and fair dealing. Amanda then moved and obtained leave to file an intervening complaint that also claimed Mid–American breached its implied covenant of good faith and fair dealing.

{¶ 7} Judith and Amanda jointly moved for summary judgment, arguing the portions of the settlement that paid the funeral and headstone expenses should not count against them as amounts available for payment from the tortfeasor's insurance company, thereby increasing the amount Mid–American was obligated to pay them under the policy. Mid–American's cross-motion for summary judgment argued the limits of its liability should be reduced by the entire settlement amount received from the tortfeasor's insurer. The trial court granted Mid–American's motion for summary judgment. In that judgment entry, the trial court concluded that because it was granting Mid–American's motion for summary judgment, the remaining bad faith claims were rendered moot and dismissed those claims.

{¶ 8} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court and, therefore,

engages in a de novo review. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121. Under Civ.R. 56, summary judgment is proper only when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. A fact is material when it affects the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186.

### Reduction of Underinsured Motorist Coverage Limits

{¶ 9} In their first assignment of error, appellants assert:

{¶ 10} "The trial court erred in allowing Mid–American to reduce the uderin-sured [sic] motorist coverage by the tortfeasor's liability limits inasmuch as these limits were not available for payment to Mid–American's insureds."

{¶ 11} The fundamental dispute between the parties is whether the funeral and headstone expenses paid out of the settlement with the tortfeasor's insurer should be taken into account when determining the amount Mid–American owes to appellants under their underinsured motorist coverage. Appellants argue the expenses are in the nature of a statutory subrogation lien and, therefore, are not "an expense of the insured." Accordingly, they believe that Mid–American can reduce the amount it owes them for their underinsured claim only by the remaining portion of the settlement received from the tortfeasor's insured that was left after those expenses were paid. In contrast, Mid–American argues that the funeral and headstone expenses are more like attorney fees, are "an expense of the insured," and therefore reduce its payment on appellants' underinsured claims. What both parties fail to address is the key issue in this case: who is the insured? This court cannot decide whether an expense is an expense of the insured without first determining who the insured is.

{¶ 12} R.C. 3937.18 governs uninsured/underinsured ("UM/UIM") motorist coverage law in Ohio. But that statute has been amended many times in recent years. When determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time the contract for automobile liability insurance was entered into controls the rights and duties of the contracting parties. *Ross v. Farmers Ins. Group of Companies* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, syllabus. In this case the applicable version of R.C. 3937.18 is the version effective September 21, 2000. That version provides that "[t]he policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." Sub.S.B. No. 267, 148

Ohio Laws, Part V, 11380, 11381. The question in this case is what amounts are available for payment to the insured under the tortfeasor's liability policy.

{¶ 13} When determining the amounts available for payment to the insured, a court must do more than a simple policy-limits-to-policy-limits comparison. *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 278, 744 N.E.2d 719. Such a comparison would create the potential for the law to treat uninsured and underinsured motorist claimants differently. Id. Instead, "the 'amounts available for payment' language in former R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." Id. at syllabus. "The phrase 'amounts available for payment' means just that. In other words, it means those amounts the insured actually recovers from a tortfeasor whose liability policy is subject to the claim of the insured and also to the claims of other injured persons." Id. at 276, 744 N.E.2d 719. For instance, if a victim receives less money from a tortfeasor's insurer than the limits of the victim's UM/UIM coverage and the tortfeasor has exhausted the limits of his liability insurance because there were claims paid to multiple victims, then the victim is entitled to the limits of his UM/UIM coverage even though the tortfeasor's total liability coverage may be more than the insured's UM/UIM policy limits. *Littrell v. Wigglesworth* (2001), 91 Ohio St.3d 425, 430–433, 746 N.E.2d 1077. In other words, an insured cannot recover expenses from her UM/UIM insurer that she incurred that are related to her claims against the tortfeasor, but the limits of her UM/UIM coverage are not reduced merely because the tortfeasor's coverage paid the expenses of another party. Id.

{¶ 14} In *Littrell*, the claimants were insured by distinct insurance policies containing separate UM/UIM coverage. The court stated that the attorney fees incurred by the insureds when prosecuting their claims for UM/UIM coverage should not reduce the "amounts available for payment" from the tortfeasor's liability carrier because these fees were expenses of the insureds. Id. at 434, 746 N.E.2d 1077. But it found that a statutory subrogation lien to Medicare should be considered when determining the amounts available for payment from the tortfeasor because that lien was an expense of the estate, which was not an insured under the policies in question. Id.

{¶ 15} The parties base their dispute on the distinction *Littrell* drew between attorney fees and the statutory subrogation lien, arguing that funeral and headstone expenses are either more or less like statutory liens or attorney fees. For instance, appellants argue that the funeral and headstone expenses are more like a statutory subrogation lien because a court ordered that they be paid from the settlement, and appellees contend that those expenses are more like attorney fees because they are incurred after death. But what the parties fail to realize is

that there is no real distinction between attorney fees, a statutory lien, or the funeral and headstone expenses when these expenses are considered in the abstract. Each is an expense of an insured. The salient question is which insured? For instance, if the decedent's estate seeks underinsured motorist benefits, then both a Medicaid lien and the funeral and headstone expenses would be expenses of that particular insured. On the other hand, if the insured is a statutory wrongful death beneficiary insured under a distinct insurance policy, then the expenses of the estate noted above would not be an expense of the separately insured beneficiary. This second situation was the fact pattern in *Littrell.*

{¶ 16} Clearly, the funeral and headstone expenses are expenses incurred by the estate. So the estate would have to consider the entire amount it received from the tortfeasor's insurance company as an amount available for payment. But although Jeremy was covered by Mid–American's insurance policy, appellants apparently believe the estate should not be considered an insured in this case because the estate has not made a claim for Jeremy's underinsured motorist benefits. This conclusion ignores the plain language of the insurance policy and former R.C. 3937.18(A)(2).

{¶ 17} The single insurance policy that Judith and Amanda are claiming underinsured motorist benefits under has per accident, not per person, coverage. It provides for a total of $300,000 of underinsured motorist coverage per accident to the insureds as a group regardless of the number of insureds entitled to that coverage for that accident. Per the terms of the policy, Judith, as the policyholder, and Amanda and Jeremy, as members of her household, are the insureds. The policy does not state how the underinsured motorist benefits will be apportioned among the insureds. It merely states the aggregate amount they are entitled to receive.

{¶ 18} Former R.C. 3937.18(A)(2) provides that the policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured. The insured in this case is more than one person, Judith, Amanda, and Jeremy. The money Jeremy's estate received from the settlement with the tortfeasor's insurer is an amount available for payment from an insurance policy covering persons liable to the insured. Therefore, the aggregate amount that Mid–American owes to its insureds, $300,000, must be reduced by the amount Jeremy's estate received, $20,000. Because we cannot distinguish among the insureds when determining the amount of underinsured motorist coverage each is entitled to, we cannot distinguish among them when determining what amounts are available for payment from other insurance sources.

{¶ 19} For the above reasons, appellants cannot now claim that the funeral and headstone expenses were not expenses of an insured. They are entitled to $280,000 in underinsured motorist benefits from Mid–American. Accordingly, their arguments to the contrary are meritless. The trial court properly granted summary judgment to Mid–American on this issue. Appellants' first assignment of error is meritless.

### Dismissal of Bad Faith Claim

{¶ 20} In their second assignment of error, appellants assert:

{¶ 21} "The trial court erred in dismissing, sua sponte, the defendant's claim for bad faith insurance practice."

{¶ 22} Appellants contend that the trial court erred by granting summary judgment on an issue not addressed in any of the motions for summary judgment. Namely, they argue that the trial court erred when it determined its resolution of the issues before it rendered appellants' counterclaims for breach of an implied covenant of good faith and fair dealing moot. Mid–American argues that the trial court did not err in dismissing those counterclaims as its decision on the issue of coverage rendered those claims moot.

{¶ 23} The trial court's judgment entry stated that it was dismissing appellants' bad faith counterclaims. It did not say it was granting summary judgment to Mid–American on those claims. As appellants correctly argue, the trial court could not have granted summary judgment to Mid–American on those claims because Mid–American did not move for summary judgment on those claims. See *Marshall v. Aaron* (1984), 15 Ohio St.3d 48, 15 OBR 145, 472 N.E.2d 335. But a trial court can sua sponte dismiss an action when it is clear that the claimant cannot prevail. *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.* (1995), 72 Ohio St.3d 106, 108, 647 N.E.2d 799.

{¶ 24} As this court recently recognized, there are two kinds of bad-faith claims an insured may bring against her insurer. *Essad v. Cincinnati Cas. Co.* (Apr. 16, 2002), 7th Dist. No. 00 CA 199, 2002 WL 924439. The first type of bad-faith claim is dependent on proving the underlying contract claim because it alleges that the insurer had no lawful basis to deny coverage. Id. The second type of claim is not dependent on proving the underlying contract claim because it alleges that the insurer had no reasonable justification to fail to determine whether its refusal had a lawful basis. Id. A careful review of appellants' bad-faith claims against Mid–American reveals that they have alleged the first, but not the second, type of bad faith-claim. So when the trial court granted summary judgment to Mid–American, it was clear that appellants could not prevail on their bad-faith claims. Appellants' argument that the trial court

improperly granted summary judgment sua sponte on this issue is meritless because the trial court properly dismissed the claim sua sponte.

{¶ 25} Accordingly, appellants' assignments of error are meritless, and the judgment of the trial court is affirmed.

Judgment affirmed.

WAITE, P.J., concurs.

GENE DONOFRIO, J., dissents with dissenting opinion.

GENE DONOFRIO, Judge, dissenting.

{¶ 26} I respectfully dissent from the majority opinion because I believe that the funeral and headstone expenses should not be considered amounts available for payment under former R.C. 3937.18(A)(2).

{¶ 27} *Littrell v. Wigglesworth* (2001), 91 Ohio St.3d 425, 746 N.E.2d 1077, involved three consolidated cases. Of those three, I believe *Karr v. Borchardt* is the one that most compels the conclusion that the funeral and headstone expenses should not be considered amounts available for payment under former R.C. 3937.18(A)(2). In that particular case, the tortfeasor was covered by $100,000 per-person liability insurance, which paid each of the decedent's five statutory beneficiaries $20,000 each. Some of those beneficiaries were insured by other policies providing $100,000 of per-person UM/UIM coverage. The Ohio Supreme Court rejected a "policy-to-policy" comparison, instead comparing the amounts the beneficiaries actually received to the limits of their UM/UIM policies. The beneficiaries also argued that each received slightly less than $9,000 from the tortfeasor after expenses, attorney fees, and a statutory subrogation lien to Medicare and that these amounts should not be considered amounts available for payment.

{¶ 28} The court rejected their argument, in part holding that "expenses and attorney fees are not part of the setoff equation." Id. at 434, 746 N.E.2d 1077. The court added, "Such fees are an expense of an insured and should not act, in order to increase underinsured motorist benefits, to reduce the 'amounts available for payment' from the tortfeasor's automobile liability carrier." However, the court also went on to say that "a statutory subrogation lien to Medicare should be considered when determining the amounts available for payment from the tortfeasor. Such a lien is not an expense of an insured." Id.

{¶ 29} I agree with appellants' argument that the expenses in this case are more like the statutory subrogation lien than attorney fees because they are not an expense of the insured. The West Virginia court ordered, as is required by

that state's law, that the settlement funds from the tortfeasor's insurer be used to pay the funeral expenses before those funds could be included in the estate.

{¶ 30} Although Mid–American analogizes funeral expenses to attorney fees, I believe they are much more analogous to the Medicare lien because funeral expenses are damages resulting from the accident. I see no important distinction as to when those expenses were incurred. Even so, if, for example, Jeremy had been hospitalized after the accident and died days later, he would have incurred medical bills. The proceeds of a settlement with the tortfeasor's insurer would go to pay those bills before they could be distributed to any beneficiaries. As the Ohio Supreme Court observed, these expenses would reduce the amount available for payment because they were expenses not incurred by the person seeking UM/UIM coverage. The funeral expenses in this case are a necessary and inevitable element of damages in the same way that medical bills are a necessary element of damages in the aforementioned example. In contrast, attorney fees are not damages that are caused by tortious conduct. They are expenses that are incurred after the accident by the person seeking to recover UM/UIM coverage.

{¶ 31} Judith and Amanda are the insured in this case. They are the ones seeking UM/UIM benefits. The funeral and headstone are not clearly "expenses of the insured" but that of the estate and thus should not be set off.

{¶ 32} Based on the foregoing, I would reverse the trial court's decision.