PALLAY, Appellee,

v.

NATIONWIDE INSURANCE COMPANY, Appellant.

[Cite as *Pallay v. Nationwide Ins. Co.*, 165 Ohio App.3d 242, 2005-Ohio-5932.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 04 MA 50.

Decided Oct. 31, 2005.

Anzellotti, Sperling, Pazol & Small Co., L.P.A., James L. Pazol, and Ilan Wexler, for appellee.

Weston, Hurd, Fallon, Paisley & Howley, Timothy D. Johnson, and Adam H. Gimbel, for appellant.

---

WAITE, Judge.

{¶ 1} Appellant, Nationwide Mutual Insurance Company, appeals a decision of the Mahoning County Court of Common Pleas to grant summary judgment to appellee, John S. Pallay, in a claim involving underinsured-motorist ("UIM") insurance benefits.

{¶ 2} The record reflects that appellee was a passenger in a vehicle being driven by his wife. Appellee's wife caused an accident that resulted in injuries to appellee. Appellee and his wife were covered by an automobile insurance policy issued by Nationwide (the "Policy"). Appellee settled with Nationwide for the $100,000 liability limits of the Policy due to his wife's liability for the accident.

Appellee then filed a complaint to recover $52,894.87 in UIM benefits to compensate him for the amount of a Medicare statutory lien he was obligated to pay out of the proceeds of the settlement.

{¶ 3} The trial court ruled, pursuant to *Littrell v. Wigglesworth* (2001), 91 Ohio St.3d 425, 746 N.E.2d 1077, that appellee's Medicare statutory lien is not an expense of an insured and should not act to reduce UIM benefits. However, this court recently ruled otherwise in *Mid–American Fire & Cas. Co. v. Broughton*, 154 Ohio App.3d 728, 2003-Ohio-5305, 798 N.E.2d 1109. Perhaps more important, the clear language of the Policy prohibits a party from collecting both liability and UIM benefits for the same accident. Thus, the trial court should have granted Nationwide's motion to dismiss, and the decision of the trial court is hereby reversed and judgment is entered for appellant Nationwide.

## PROCEDURAL HISTORY

{¶ 4} This appeal involves what purports to be a review of a summary-judgment motion, but in reality is a review of a decision on a motion to dismiss. Although the trial court did grant summary judgment to appellee, there are no established facts of record in this case. The only "facts" referred to by the parties have been assumed for the sake of argument. Therefore, factual allegations in this matter must be viewed in the light of the aforementioned caveat.

{¶ 5} According to the complaint, appellee was injured in an automobile accident in Colorado on March 6, 1998. His wife, Giselle Pallay, was driving. Appellee was a passenger in the vehicle. Appellee and his wife owned and were the named insureds on a personal automobile liability insurance policy issued by Nationwide. The Policy had bodily injury liability limits of $100,000 per person and $300,000 per occurrence. The Policy also provided $100,000/$300,000 in UIM coverage.

{¶ 6} On December 19, 2002, appellee filed a complaint in the Mahoning County Court of Common Pleas. The complaint stated that appellee had incurred more than $73,000 in medical bills, of which $52,894.87 had been paid by Medicare and was subject to a federal statutory lien. Appellee also alleged that he had received the $100,000 policy liability limit in a settlement with Nationwide, but that he reserved his right to pursue UIM benefits under the Policy. A copy of the "Release and Settlement" of the claim was attached to the complaint.

{¶ 7} On March 4, 2003, Nationwide filed a Civ.R. 12(B)(6) motion to dismiss. Nationwide argued that the terms of the Policy limited recovery to $100,000 per accident; that the UIM section of the Policy states that the UIM limits will be reduced "by any amount paid by or for any liable parties"; that it is established case law that a person cannot recover both the liability limits and the UIM limits

from the same policy; that R.C. 3937.18(A)(2) requires that the UIM limits of an auto insurance policy be reduced by any amount available for payment under all applicable bodily injury liability policies covering persons liable to the insured; and that *Littrell* did not apply to the facts of this case, as alleged by appellee in his complaint.

{¶ 8} Instead of directly responding to this motion, on March 25, 2003, appellee filed a "Memorandum in Opposition to Summary Judgment." Appellee requested that the court convert the Civ.R. 12(B)(6) motion into a motion for summary judgment, and also that appellee's own motion be treated as a motion for summary judgment. The motion purports to adopt the "statement of facts" in Nationwide's motion to dismiss, but Nationwide assumed for the sake of argument only that the facts alleged in appellee's complaint were true in order to show that appellee could not prevail on those facts for purposes of its Civ.R. 12(B)(6) motion. Appellee provided no independent evidence in support of its motion, and his only argument was that *Littrell* should be applied to allow him to be reimbursed for the amount of his statutory Medicare lien.

{¶ 9} On March 27, 2003, Nationwide filed a "Reply Brief in Support of Motion to Dismiss." The brief also opposed appellee's motion for summary judgment. No new arguments were presented.

{¶ 10} On November 13, 2003, the trial court overruled Nationwide's motion to dismiss.

{¶ 11} On November 13, 2003, in a separate judgment entry, the trial court overruled appellee's motion for summary judgment.

{¶ 12} On November 24, 2003, Nationwide filed a brief in opposition to appellee's motion for summary judgment, apparently not realizing that the court had already ruled on the motion.

{¶ 13} On February 3, 2004, appellee filed a motion for reconsideration of the court's decision not to grant appellee summary judgment. Appellee simply cited *Littrell* again and concluded that judgment should be rendered in his favor.

{¶ 14} On February 4, 2004, Nationwide also filed a motion for reconsideration. Nationwide argued that the case could be settled on the matters of law raised in Nationwide's prior filings.

{¶ 15} On March 2, 2004, the trial court granted the motions for reconsideration. The court then ruled that *Littrell* governed the outcome of the case, and granted summary judgment to appellee in the amount of $52,894.87.

{¶ 16} Nationwide filed a timely appeal on March 15, 2004.

ASSIGNMENT OF ERROR

{¶ 17} "The trial court erred when it overruled Nationwide's motion to dismiss and granted Pallay's motion for summary judgment."

{¶ 18} Nationwide's arguments are primarily aimed at reversing the trial court's decision to overrule its Civ.R. 12(B)(6) motion to dismiss. If the trial court is reversed on that basis, in effect the trial court's decision to grant summary judgment to appellee will also be reversed.

{¶ 19} When reviewing a judgment on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, an appellate court's standard of review is de novo. *Perrysburg v. Rossford,* 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, at ¶ 5. The court will look only to the complaint or, in a proper case, the copy of a written instrument upon which a claim is predicated, to determine whether the allegations are legally sufficient to state a claim. *Slife v. Kundtz Properties* (1974), 40 Ohio App.2d 179, 185–186, 69 O.O.2d 178, 318 N.E.2d 557. A Civ.R. 12(B)(6) motion should be granted "only where the allegations in the complaint show the court to a certainty that the plaintiff can prove no set of facts upon which he might recover," or where the "writing presents an insuperable bar to relief." Id. at 185–186, 69 O.O.2d 178, 318 N.E.2d 557. In construing the complaint, a court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753. "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 145, 573 N.E.2d 1063.

{¶ 20} Summary judgment is also reviewed under a de novo standard of review. In accordance with Civ.R. 56, summary judgment is appropriate when "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274." *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201.

{¶ 21} If the moving party meets its initial burden of production, the nonmoving party bears a reciprocal burden to produce evidence on any issue for which

that party bears the burden of proof at trial. *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264.

{¶ 22} Nationwide presents three subissues for our review under its sole assignment of error.

{¶ 23} "1. Pallay cannot recover the full per person limit under the liability and UM/UIM coverage of his own policy."

{¶ 24} Nationwide argues that the Policy does not contemplate a situation in which an insured may be able to collect the maximum limit of liability coverage and also collect UIM benefits above and beyond that maximum amount, which in this case is $100,000. The Policy contains a "Limits of Payment" section, as part of UM/UIM provisions, that states: "The limits of this coverage will be reduced by any amount paid by or for any liable party." Nationwide asserts that this unambiguous limitation prevents appellee from using the UIM provisions to collect more than the $100,000 per person limit of the Policy.

{¶ 25} Appellant cites only one case under this subissue. The case is *Viccarone v. Colonial Penn Ins. Co.* (Feb. 23, 1995), 8th Dist. No. 66822, 1995 WL 79789, which held that an auto insurance policy could provide for a setoff from UIM coverage for any recovery made under the liability provisions of the same policy. The legal analysis of *Viccarone*, though, was specifically rejected by the Supreme Court. *Keppel v. Keppel Estate* (1996), 76 Ohio St.3d 231, 667 N.E.2d 360. That said, these cases are not particularly relevant at this time, because *Viccarone* and *Keppel* were interpreting much earlier versions of R.C. 3937.18 and were based on case law that has since been superseded by statutory changes. Most important, *Keppel* was based on the analysis of *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, which was specifically and expressly superseded by the legislature in later versions of R.C. 3937.18.

{¶ 26} The issue at the heart of this subissue is usually referred to as intrapolicy stacking, which refers to an attempt to obtain multiple coverage from two distinct sections of the same insurance policy. The *Savoie* case had held that antistacking provisions in an auto insurance policy could not be enforced if the insured paid separate premiums for the separate coverages. According to *Savoie*, the payment of separate premiums meant that coverages could be stacked, one on top of the other, even if the policy contained antistacking language.

{¶ 27} When the legislature revised R.C. 3937.18 in 1994, as part of Am.Sub. S.B. No. 20, effective October 20, 1994, it included the following uncodified language:

{¶ 28} "Section 9. It is the intent of the General Assembly in amending division (G) of section 3937.18 of the Revised Code to supersede the effect of the

holding of the Ohio Supreme Court in its October 1, 1993 decision in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, relative to the stacking of insurance coverages, and to declare and confirm that the purpose and intent of the 114th General Assembly in enacting division (G) of section 3937.18 in Am. H.B. 489 [were], and the intent of the General Assembly in amending section 3937.18 of the Revised Code in this act is, to permit any motor vehicle insurance policy that includes uninsured motorist coverage and underinsured motorist coverage to include terms and conditions to preclude any and all stacking of such coverages, including interfamily and intrafamily stacking."

{¶ 29} The antistacking provision, R.C. 3937.18(G), reads as follows:

{¶ 30} "Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section or selected in accordance with division (C) of this section *may, without regard to any premiums involved, include terms and conditions that preclude any and all stacking of such coverages, including but not limited to:*

{¶ 31} "(1) Interfamily stacking, which is the aggregating of the limits of such coverages by the same person or two or more persons, whether family members or not, who are not members of the same household;

{¶ 32} "(2) Intrafamily stacking, which is the aggregating of the limits of such coverages purchased by the same person or two or more family members of the same household." (Emphasis added.)

{¶ 33} Although uncodified Section 9 to Am.Sub.S.B. No. 20 does not specifically say that intrapolicy antistacking provisions will be permissible, it is clear from the "including but not limited to" language, and from the legislature's sharp rejection of the *Savoie* decision, that intrapolicy antistacking in an auto insurance policy would be permitted under the revised statute.

{¶ 34} Then, in the revisions to R.C. 3937.18 that occurred in Am.Sub.H.B. No. 261, effective Sept. 3, 1997, the following language was added to the statute:

{¶ 35} "(K) As used in this section, 'uninsured motor vehicle' and 'underinsured motor vehicle' do not include any of the following motor vehicles:

{¶ 36} "(1) A motor vehicle that has applicable liability coverage in the policy under which the uninsured and underinsured motorist coverages are provided."

{¶ 37} This new provision not only allows for an auto insurance policy to include intrapolicy antistacking, it appears to require such language. Pursuant to the statute, if a policy provides liability coverage for an automobile, it cannot also provide UM/UIM coverage for that same vehicle. The parties appear to agree that the Am.Sub.H.B. No. 261 version of the statute is the one that applies to the instant case.

{¶ 38} Appellee has not presented any case law or theory that would prohibit Nationwide from enforcing its intrapolicy antistacking clause or that would contradict the effect of R.C. 3937.18(K)(1). Thus, appellee is barred from recovery because he has already received the $100,000 benefit limit from the liability coverage section of the Policy.

{¶ 39} For this reason alone, the trial court judgment must be reversed and judgment entered in favor of Nationwide on its Civ.R. 12(B)(6) motion to dismiss.

{¶ 40} "2. Any obligation to reimburse medicare for payments made for medical expenses incurred by Pallay should not be set-off from the $100,000 in determining the amount available for payment."

{¶ 41} This argument is based on R.C. 3937.18(A)(2), which states:

{¶ 42} "Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. *The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.*" (Emphasis added.) (Am.Sub. H.B. No. 261, effective Sept. 3, 1997.)

{¶ 43} R.C. 3937.18(A)(2) requires that UIM benefits be reduced by any "amounts available for payment" under all insurance policies covering persons liable to the insured, which would include any payments deriving from Mrs. Pallay's liability to appellee. The "amounts available for payment" language has been frequently litigated. An issue that has often arisen is whether "amounts available for payment" means that an UIM claimant must simply look to the tortfeasor's auto liability policy and deduct the limits of liability coverage as stated in the policy, or whether "amounts available for payment" refers to money actually received by the UIM claimant from the tortfeasor. The tortfeasor in this case is Mrs. Pallay.

{¶ 44} In *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 744 N.E.2d 719, the Ohio Supreme Court held:

{¶ 45} "[W]e construe the 'amounts available for payment' language in R.C. 3937.18(A)(2), as amended by S.B. 20, as requiring a comparison between the amounts that are actually accessible to the injured claimant from the tortfeasor's automobile liability insurance carrier and the injured claimant's own underinsured motorist coverage limits. The phrase 'amounts available for payment' means just that. In other words, it means those amounts the insured actually recovers from a tortfeasor whose liability policy is subject to the claim of the insured and also to the claims of other injured persons." Id. at 276, 744 N.E.2d 719.

{¶ 46} In *Littrell v. Wigglesworth,* 91 Ohio St.3d 425, 746 N.E.2d 1077, the Supreme Court considered whether certain expenses of an insured might be deducted from the "amounts available for payment" calculations, for purposes of determining the UIM policy limits pursuant to R.C. 3937.18(A)(2). One of the possible expenses that the court considered was a Medicare lien. When Medicare makes a payment for medical care relating to a personal injury claim, federal law gives Medicare very powerful subrogation rights, often referred to as a Medicare lien, to recover funds from third parties who are liable for the injuries and liable for the related medical expenses. According to federal statutory law, this right of subrogation is superior to any other right, interest, judgment, or claim:

{¶ 47} "(iii) Subrogation rights

{¶ 48} "The United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan." Section 1395y(b)(2)(B)(iii), Title 42, U.S.Code.

{¶ 49} *Littrell* held:

{¶ 50} "As a preliminary matter, we hold that expenses and attorney fees are not part of the setoff equation. Such fees are an expense of an insured and should not act, in order to increase underinsured motorist benefits, to reduce the 'amounts available for payment' from the tortfeasor's automobile liability carrier. Conversely, *a statutory subrogation lien to Medicare should be considered when determining the amounts available for payment from the tortfeasor.* Such a lien is not an expense of an insured." (Emphasis added.) Id., 91 Ohio St.3d at 434, 746 N.E.2d 1077.

{¶ 51} Although this quotation from *Littrell* appears to make a sweeping conclusion about Medicare liens in the context of UIM benefits, there really is very little discussion about the topic in the *Littrell* opinion. It is necessary to examine the context of *Littrell* to understand how the Supreme Court came to its conclusion. *Littrell* actually involved three separate UIM cases, one of which was

*Karr v. Borchardt* (2001), 91 Ohio St.3d 425, 746 N.E.2d 1077. In *Karr*, the victim of the underlying auto accident was Helen Beddow, who was riding as a passenger in her husband's car when an accident occurred. Mrs. Beddow was severely injured and soon died from her injuries. Medicare paid for some of Mrs. Beddow's medical expenses prior to her death. Mrs. Beddow was survived by her husband and four children. The five survivors brought a wrongful-death suit and also sought UIM benefits from their own respective auto insurance policies. The tortfeasor had liability insurance of $100,000, which was paid to Mrs. Beddow's estate and then distributed to the survivors. Each of the five survivors, though, received only $9,000 instead of $20,000 because certain expenses, attorney fees, and a pro rata share of a Medicare lien had been deducted from the original amount.

{¶ 52} Three of the survivors attempted to collect UIM benefits from three separate insurance policies. The insurance company attempted to reduce the UIM limits of each policy by $20,000, based on the "amounts available for payment" language of R.C. 3937.18(A)(2). The survivors argued in rebuttal that only $9,000 should be subtracted from the declared limits of their UIM coverages, because the stated expenses, attorney fees, and Medicare lien were expenses of Mrs. Beddow's estate and not of the survivors.

{¶ 53} The *Littrell* opinion determined that attorney fees incurred in order to obtain UIM benefits were an expense of the insured, and could not be deducted from the "amounts available for payment" calculation. *Littrell* also concluded, without any further comment or analysis, that a Medicare lien was not an expense of the insureds and that each of the three wrongful death UIM claimants could deduct their pro rata share of the Medicare lien from the "amounts available for payment" calculation. Id., 91 Ohio St.3d at 434, 746 N.E.2d 1077.

{¶ 54} The actual holding in *Littrell* was that "a statutory subrogation lien to Medicare should be considered" when interpreting the language of R.C. 3937.18(A)(2). Id. at 434, 746 N.E.2d 1077. To "consider" something is a rather open-ended requirement. *Littrell* did not require that Medicare liens be deducted automatically from the "amounts available for payment" calculation required by R.C. 3937.18(A)(2), but rather, merely required that it should be considered. In some cases, that consideration might lead to the conclusion that the Medicare lien should reduce the "amounts available for payment" calculation. In other cases, a different conclusion might be reached. In this respect, appellee's interpretation of *Littrell* is in error.

{¶ 55} This court has recently interpreted *Littrell* to mean that a Medicaid lien (similar to a Medicare lien) would not reduce the "amounts available for payment" calculation if the insurance policy in question is the decedent's own insurance policy. *Mid–American Fire & Cas. Co. v. Broughton,* 154 Ohio App.3d 728, 2003-

Ohio-5305, 798 N.E.2d 1109, ¶ 15. On the other hand, a Medicaid lien would reduce the "amounts available for payment" calculation if the insured is a statutory wrongful-death beneficiary attempting to make a claim on his or her own auto insurance policy. Id. It should be kept in mind, though, that *Broughton* did not actually involve a Medicaid lien. The issue actually under review was whether funeral and headstone expenses could be deducted from the "amounts available for payment" calculation. This court discussed the Medicaid lien only by way of comparison to headstone and funeral expenses.

{¶ 56} Appellee argues that this court's *Broughton* decision was based on the specific facts of the case and that the facts of the instant case are quite different. In *Broughton*, the victim was considered to be an insured under his mother's auto insurance policy. The tortfeasor had $20,000 in liability coverage, while the UIM provisions of the victim's policy provided $300,000 of coverage per accident. The insurance company filed a declaratory-judgment action, claiming that their maximum exposure for UIM coverage was $280,000. The mother and the victim's sister argued that there was more than $280,000 in coverage because funeral and headstone expenses should have been deducted from the $20,000 "amounts available for payment" calculation. They argued that funeral and headstone expenses were similar to the Medicare lien discussed in *Littrell*. In a split decision, this court disagreed with the mother and sister and held:

{¶ 57} "The parties base their dispute on the distinction *Littrell* drew between attorney fees and the statutory subrogation lien, arguing that funeral and headstone expenses are either more or less like statutory liens or attorney fees. For instance, appellants argue that the funeral and headstone expenses are more like a statutory subrogation lien because a court ordered that they be paid from the settlement, and appellees contend that those expenses are more like attorney fees because they are incurred after death. But what the parties fail to realize is that there is no real distinction between attorney fees, a statutory lien, or the funeral and headstone expenses when these expenses are considered in the abstract. Each is an expense of an insured. The salient question is which insured? For instance, if the decedent's estate seeks underinsured motorist benefits, then both a Medicaid lien and the funeral and headstone expenses would be expenses of that particular insured. On the other hand, if the insured is a statutory wrongful death beneficiary insured under a distinct insurance policy, then the expenses of the estate noted above would not be an expense of the separately insured beneficiary. This second situation was the fact pattern in *Littrell*." *Broughton*, 154 Ohio App.3d 728, 2003-Ohio-5305, 798 N.E.2d 1109, ¶ 15.

{¶ 58} Appellee argues that in *Broughton* we reached our conclusion only because the insurance policy's UIM provision did not provide a mechanism to

divide the UIM benefits between the mother, the sister, and the victim's estate. The UIM provision in *Broughton* was "per accident" and not "per person." Although there is some discussion of this in *Broughton*, it is not particularly relevant to our conclusion. The fundamental holding in *Broughton* is that a Medicaid lien should not act to increase the UIM benefits of the person who actually incurred the expenses giving rise to the lien. A Medicaid lien is an expense of the injured party, or as was the case in *Broughton*, the deceased party, and thus could not be used to reduce the "amounts available for payment" calculation, which reduction would in turn increase the potential maximum UIM benefits. According to *Broughton*, though, a Medicaid lien is not an expense of a wrongful-death beneficiary making a claim under a separate insurance policy.

{¶ 59} In the instant case, appellee is the policyholder, as well as the victim and the UIM claimant. The medical expenses he incurred were his own, and the Medicare lien that he is liable to pay is based on his own expenses. In our consideration of how appellee's Medicare lien should be treated in this case, we rely on the reasoning in *Littrell* and *Broughton* and conclude that appellee is not permitted to increase his potential UIM benefit by deducting the Medicare lien from the "amounts available for payment" calculation.

{¶ 60} This same conclusion has been reached in other districts. *Mathis v. Am. Commerce Ins. Co.*, 8th Dist. No. 83433, 2004-Ohio-2021, 2004 WL 859196; *Clark v. Boddie*, 2nd Dist. No. 20339, 2004-Ohio-2605, 2004 WL 1145874.

{¶ 61} Based on the reasoning set forth above, appellee is not entitled to set off his Medicare lien from "amounts available for payment" calculation under his own insurance policy for injuries he himself sustained, and, thus, he is not entitled to any UIM benefits.

{¶ 62} "3. Pallay is not an underinsured motorist as the amount for payment from the tortfeasor is $100,000 and Nationwide has identical underinsured motorists limits."

{¶ 63} Nationwide's argument here is only a rewording of what appears in the previous subissue, involving the interpretation of the phrase "amounts available for payment" in R.C. 3937.18(A)(2). There is one additional issue though, involving the Policy definition of uninsured and underinsured motor vehicle, that should be mentioned. The Policy contains the following provision:

{¶ 64} "1. An uninsured motor vehicle is:

{¶ 65} "a) one for which there is no bodily injury liability bond or insurance at the time of the accident.

{¶ 66} "b) one which is underinsured. This is a **motor vehicle** for which bodily injury liability coverage or bonds are in effect; however, their total amount is less

than the limits of this coverage. See the Declarations for those limits." (Bold-face sic.)

{¶ 67} (Policy, p. 14.)

{¶ 68} Even more important, the Policy states:

{¶ 69} "2. We will not consider as an **uninsured motor vehicle**:

{¶ 70} " * * *

{¶ 71} "e) any **motor vehicle** insured under the liability coverage of this policy."

{¶ 72} Under the Policy, an uninsured vehicle encompasses the definition of underinsured vehicle, and an uninsured vehicle cannot be one that is covered under the liability section of the Policy. Based on this simple analysis, appellee cannot receive UIM benefits, because the automobile in which he sustained his injuries was covered under the liability section of the Policy.

## CONCLUSION

{¶ 73} It is clear from the record and the cited case law that appellant has at least three reasons for prevailing in this appeal. First, the Policy contains a valid antistacking clause that reduced UIM coverage by any amount paid out under the liability portion of the Policy. Second, the *Littrell* case does not allow the person who incurred the injuries to use a Medicare lien to increase his or her UIM benefits under that person's own automobile insurance policy. Third, appellee's vehicle cannot be treated as an underinsured motor vehicle under the definitions contained within the Policy. Therefore, the decision of the Mahoning County Court of Common Pleas is reversed, and judgment is entered in favor of appellant, Nationwide Insurance Company.

Judgment reversed.

DONOFRIO, P.J., and VUKOVICH, J., concur.