OPINION
{¶ 1} The instant appeal challenges the trial court's decision to grant summary judgment to Appellee Nationwide Mutual Insurance Co. in a case involving underinsured motorists coverage (UIM). Appellant William C. Boila was injured in a car accident while riding as a passenger in a vehicle owned and operated by his mother, Barbara Nunez. Appellant's medical bills were paid by Medicare, resulting in an automatic $42,139.78 federal statutory lien. Appellant eventually settled with the tortfeasor's insurance company and collected $100,000. On June 7, 2004, Appellant filed a complaint against Appellee, who issued the auto insurance policy to Barbara Nunez, demanding UIM benefits. There were two counts in the complaint. In the first count Appellant asserted that Nationwide should pay $42,139.78 in UIM benefits to make up for the Medicare lien that he was required to repay. Nationwide filed a motion for partial summary judgment on the UIM claim. The trial court granted partial summary judgment to Nationwide, relying on this Court's recent decision in Pallay v. Nationwide Ins. Co., 165 Ohio App.3d 242,2005-Ohio-5932, 846 N.E.2d 58. In Pallay we dealt with the same issue and held that a person who is insured under a UIM policy cannot increase his or her UIM benefits in order to compensate for a statutory Medicare lien. The trial court was correct in relying on Pallay, thus, the trial court's decision to grant summary judgment to Nationwide was correct and is hereby affirmed.
 {¶ 2} Appellant also presented a second claim against Nationwide still pending in the trial court. The issue raised in the second claim for relief is whether Appellant was entitled to recover $10,000 under the medical pay portion of the *Page 2 
insurance policy. The primary factual issue in dispute is whether Appellant was wearing his seat belt at the time of the accident.
 {¶ 3} The October 19, 2006, partial summary judgment order is final and appealable. Pursuant to R.C. 2505.02, an order may be both final and appealable if it completely resolves at least one full cause of action in a multiple claim case with an express certification by the trial court that there is no just reason for delay pursuant to Civ.R. 54(B).Bowersmith v. United Parcel Serv., Inc., 166 Ohio App.3d 22,2006-Ohio-1417, 848 N.E.2d 919, ¶ 6. Appellant's first claim is for UIM coverage based on the existence of a Medicare lien. The issue on appeal deals with a legal question: the effect of a Medicare lien on UIM coverage. The trial court's judgment completely resolves the issue in favor of Appellee. The second claim primarily revolves around a factual dispute over whether Appellant was wearing a seatbelt. Insurance coverage is being pursued in the second claim under the medical payment section of the policy, which is completely separate from the UIM section of the policy. Appellant cannot receive UIM benefits under the medical pay provisions of the contract, and vice versa. Since the claims appear to be completely distinct from each other, this appeal may proceed pursuant to Civ.R. 54(B) and R.C. 2505.02.
 ASSIGNMENT OF ERROR {¶ 4} "The Trial Court Erred when granting Defendant-Appellee Nationwide Insurance partial summary judgment on the issue of whether Pliantiff-Appellant [sic] can deduct his medicare lien from the `amounts available for payment' calculation." *Page 3 
 {¶ 5} This is an appeal of a summary judgment determination in favor of an insurer involving UIM coverage. Summary judgment is reviewed under a de novo standard of review. In accordance with Civ.R. 56, summary judgment is appropriate when, "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v.Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v.Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274."Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367, 369-370,696 N.E.2d 201.
 {¶ 6} If the moving party meets its initial burden, the nonmoving party bears a reciprocal burden to produce evidence on any issue for which that party bears the burden of proof at trial. Dresher,75 Ohio St.3d at 293, 662 N.E.2d 264.
 {¶ 7} Appellant's argument begins with a recitation of the statutory provision that reduces an insured's UIM policy limits for bodily injury by the amount available for payment from the tortfeasor's insurance policies, as found in R.C. 3937.18(A)(2):
 {¶ 8} "Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder for bodily injury, sickness, or disease, *Page 4 
including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of theunderinsured motorist coverage shall be reduced by those amountsavailable for payment under all applicable bodily injury liability bondsand insurance policies covering persons liable to the insured." (Emphasis added.)
 {¶ 9} It is the final sentence of the statute that is at issue in this case, or more specifically, the phrase "amounts available for payment." In the instant case, Barbara Nunez's insurance policy, under which Appellant was covered as a passenger, had UIM limits of $100,000 per person. Appellant received $100,000 from the tortfeasor's insurance company in settlement of the claim. Unless there is some other fact or consideration that might prove to disqualify some or all of the $100,000 that Appellant received from the tortfeasor's insurance company, that full amount would be an amount available for payment under R.C.3937.18(A)(2). Tortfeasor's payment completely offsets the UIM policy limit in Barbara Nunez's policy, making the UIM coverage $0 and resulting in no UIM benefits for Appellant. In the instant appeal Appellant attempts to have his Medicare lien deducted from the "amounts available *Page 5 
for payment" calculation, ultimately to provide Appellant with $42,139.78 of UIM coverage.
 {¶ 10} It is worth noting from the outset that a Medicare lien is not really a lien, but a right of subrogation based on federal statutory law. According to Section 1395y(b)(2)(B)(iv), Title 42, U.S. Code, this right of subrogation is superior to any other right, interest, judgment, or claim:
 {¶ 11} "(iv) Subrogation rights
 {¶ 12} "The United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan."
 {¶ 13} Appellant relies on Clark v. Scarpelli (2001),91 Ohio St.3d 271, 744 N.E.2d 719, which is one of the primary cases interpreting the phrase "amounts available for payment." Prior to Clark, the appellate courts had been issuing conflicting interpretations of the "amounts available for payment" language. Some courts interpreted the phrase to mean that one could simply take the liability policy limits of the tortfeasor's insurance policy and deduct it from the UIM policy limits of the party attempting to collect the UIM benefits. To find the "amounts available for payment," one simply had to look at the insurance policies. Other courts held that only those amounts that were actually recoverable from the tortfeasor's insurance company counted as "amounts available for payment," regardless of the stated policy limits.Clark came down firmly in favor of the latter interpretation. *Page 6 
 {¶ 14} Clark noted that the phrase "amounts available for payment" was not defined in the statute. Clark recited the usual rules of statutory construction, the most basic of which is that the court should ascertain the intent of the General Assembly in enacting a statute and should interpret the statute to give effect to that intent. Cochrel v.Robinson (1925), 113 Ohio St. 526, 149 N.E. 871, paragraph four of the syllabus. If the language of the statute is unambiguous, it must be applied as written without further interpretation. State ex rel.Savarese v. Buckeye Local School Dist. Bd. of Edn. (1996),74 Ohio St.3d 543, 545, 660 N.E.2d 463, 465. However, where the statutory language is ambiguous, a court must construe the language in a manner that reflects the intent of the General Assembly. Cochrel, 113 Ohio St. 526,149 N.E. 871, paragraph four of the syllabus. A statute is ambiguous when its language is subject to more than one reasonable interpretation.State v. Jordan (2000), 89 Ohio St.3d 488, 492, 733 N.E.2d 601, 605.
 {¶ 15} Clark determined that the statute was ambiguous, noting the varying interpretations of the appellate courts, and held as follows:
 {¶ 16} "[W]e construe the `amounts available for payment' language in R.C. 3937.18(A)(2), as amended by S.B. 20, as requiring a comparison between the amounts that are actually accessible to the injured claimant from the tortfeasor's automobile liability insurance carrier and the injured claimant's own underinsured motorist coverage limits. The phrase `amounts available for payment' means just that. In other words, it means those amounts the insured actually recovers from a *Page 7 
tortfeasor whose liability policy is subject to the claim of the insured and also to the claims of other injured persons." Id. at 276,744 N.E.2d 719.
 {¶ 17} Clark discusses at some length the original reason for mandatory underinsured motorists insurance:
 {¶ 18} "In James v. Michigan Mut. Ins. Co. (1985), 18 Ohio St.3d 386,18 OBR 440, 481 N.E.2d 272, disapproved on other grounds in Cole v.Holland (1996), 76 Ohio St.3d 220, 667 N.E.2d 353, the court discussed the motivation behind the General Assembly's adoption of mandatory underinsured motorist coverage, which was found at that time in former R.C. 3937.181. See 138 Ohio Laws, Part I, 1459. `Underinsured motorist coverage was first required by statute after the legislature discovered the "underinsurance loophole" in uninsured motorist coverage-i.e., persons injured by tortfeasors having extremely low liability coverage were being denied the same coverage that was being afforded to persons who were injured by tortfeasors having no liability coverage. Thus, the original motivation behind the enactment of [former] R.C. 3937.181(C) was to assure that persons injured by an underinsured motorist would receive at least the same amount of total compensation that they would have received if they had been injured by an uninsured motorist.' (Emphasis sic.) James, 18 Ohio St.3d at 389, 18 OBR at 443,481 N.E.2d at 274-275. In discussing the issue of setoff, we held that `[a]n insurer may apply payments made by or on behalf of an underinsured motorist as a setoff directly against the limits of its underinsured motorist coverage, so long as such setoff (1) is clearly set forth in the terms of the underinsured motorist coverage and (2) does not lead toa *Page 8 result wherein the insured receives a total amount of compensation thatis less than the amount of compensation that he would have received ifhe had been injured by an uninsured motorist.' (Emphasis added.)Id. at paragraph two of the syllabus." Id. at 275.
 {¶ 19} While Appellant attempts to rely on Clark in support of his argument, Clark actually defeats that argument. First, there is absolutely no dispute that Appellant collected $100,000 from the tortfeasor's insurance policy. Whether Appellant has to pay some of that money back to Medicare (because Medicare paid for medical bills that Appellant would otherwise still owe) does not mean that Appellant did not receive the payment from the tortfeasor's insurance company or that the money was not used for his benefit. According to Clark, if Appellant received the money from the tortfeasor, it was "available for payment" and is to be deducted from the total possible UIM amount that he could have received from his mother's insurance policy. Whether or not Appellant paid his medical bills or had someone else, such as Medicare, pay them, is a completely different question.
 {¶ 20} Second, and even more persuasive, is Clark's emphasis on the fact that the UIM statute was written to remove the disparity between what an insurance company would be required to pay if the tortfeasor was completely uninsured versus a tortfeasor that was merely underinsured. In the instant case, if the tortfeasor had been completely uninsured, Appellant would have recovered, at most, $100,000 under the uninsured motorists (UM) provision of Barbara Nunez's policy. After Appellant collected that money, he would still owe Medicare $42,139.78 for medical *Page 9 
bills that it paid, leaving him with $57,860.22. Using theClark logic, the same result should apply if Appellant is recovering UIM benefits. Appellant, though, seeks a total recovery of $142,139.78, so that when he repays Medicare, he will be left with $100,000.Clark does not support the proposition that persons filing for UIM benefits rather than UM benefits should receive a windfall if Medicare has paid some or all of the medical bills of the party seeking UIM benefits.
 {¶ 21} In addition, Clark clearly held that: "underinsured motorist coverage, as described in R.C. 3937.18(A)(2) as amended by S.B. 20, was not intended to be `excess insurance' to the tortfeasor's applicable automobile liability insurance. The language of the statute is unmistakable." Id. at 276. Appellant is trying to treat the UIM section of the Nationwide policy as excess insurance so that he can recover more than the $100,000 provided by the tortfeasor's insurance policy and more than his $100,000 UIM coverage limit.
 {¶ 22} In addition to the Clark case, Appellant also relies onLittrell v. Wigglesworth (2001), 91 Ohio St.3d 425, 746 N.E.2d 1077.Liftrell actually involved three separate underlying cases dealing with a range of questions. All three cases revolved around wrongful death beneficiaries and how much those wrongful death beneficiaries could receive in UIM benefits under a variety of scenarios. All three cases involved multiple wrongful death plaintiffs and the complications that arise when dividing insurance proceeds between multiple beneficiaries. The primary (but certainly not only) issue in all three cases was whether the "amounts available for payment" calculation was based on the total amount paid by the tortfeasor's *Page 10 
insurance company to all beneficiaries, or if it was based on the amounts actually received by each individual recipient of those benefits. In other words, if the tortfeasor's insurer paid out $500,000 to three people, and one portion was only $10,000, whether the "amounts available for payment" rule requires that the UIM policy limits be reduced by $500,000 or by $10,000.
 {¶ 23} In one of the three underlying cases, Karr v. Borchardt, there was an additional question as to whether certain charges, such as attorney fees and funeral expenses, might be deducted from the "amounts available for payment" calculation. This case also contained an issue regarding how a Medicare lien would affect UIM benefits. We must underscore that the UIM policies in dispute were those of the wrongful death beneficiaries, not the insurance policies of those who died in the various automobile accidents. The instant case does not have anything to do with the division and distribution of wrongful death benefits.
 {¶ 24} Littrell (citing Clark) held that the "amounts available for payment" language meant "amounts actually accessible to and recoverable" from other insurance policies or bonds. Id. at 430. Littrell repeated the reasoning of Clark and held that, "the statutory language [of R.C.3937.18(A)(2)] indicated that a person injured by an underinsured motorist should never be afforded greater coverage than that which would be available had the tortfeasor been uninsured." Id. TheLittrell Court then went on to determine which expenses could be deducted from the "amounts available for payment" calculation. As part of the Court's analysis, it came to this conclusion: *Page 11 
 {¶ 25} "As a preliminary matter, we hold that expenses and attorney fees are not part of the setoff equation. Such fees are an expense of an insured and should not act, in order to increase underinsured motorist benefits, to reduce the `amounts available for payment' from the tortfeasor's automobile liability carrier. Conversely, a statutorysubrogation lien to Medicare should be considered when determining theamounts available for payment from the tortfeasor. Such a lien is not anexpense of an insured." (Emphasis added.) Id. at 434.
 {¶ 26} Appellant relies on the highlighted section of the quotation as the basis of its argument that he is entitled to $42,139.78 in UIM benefits. If one simply reads the quoted section out of context and with no attempt to understand what was actually under review inLittrell, it is very easy to see how Appellant could make this argument. This Court, though, has carefully reviewed this precise section ofLittrell, and concluded that it does not mean that every person with UIM coverage is automatically entitled to receive UIM benefits to cover Medicare liens. In Pallay v. Nationwide Ins. Co., 165 Ohio App.3d 242,2005-Ohio-5932, 846 N.E.2d 58, we dealt with the same argument Appellant is raising in the instant appeal and we rejected it. Pallay examined the context of the Karr v. Borchardt case, and determined that the Medicare lien in that case arose from injuries to the decedent, not injuries to the wrongful death beneficiaries who had their own separate insurance policies with UIM coverage. Pallay cited earlier caselaw from this Court indicating that a wrongful death beneficiary who has separate UIM coverage should not be penalized because *Page 12 
of a Medicare lien arising from the decedent's medical bills.Mid-American Fire Cas. Co. v. Broughton, 154 Ohio App.3d 728,2003-Ohio-5305, 798 N.E.2d 1109.
 {¶ 27} Pallay noted that Littrell only stated that a Medicare lien should be "considered" when calculating the "amounts available for payment" in UIM cases, and not that a Medicare lien should be blindly and automatically deducted in every situation. Pallay, supra, at ¶ 54. One of the crucial factors in this consideration is who actually incurred the injuries giving rise to the Medicare lien. Pallay stated:
 {¶ 28} "In the instant case, appellee is the policyholder, as well as the victim and the UIM claimant. The medical expenses he incurred were his own, and the Medicare lien that he is liable to pay is based on his own expenses. In our consideration of how appellee's Medicare lien should be treated in this case, we rely on the reasoning inLittrell and Broughton and conclude that appellee is not permitted to increase his potential UIM benefit by deducting the Medicare lien from the `amounts available for payment' calculation." Id. at ¶ 59.
 {¶ 29} Appellant seeks to have this Court overturn the Pallay decision and rely on Littrell, but Appellant ignores the fact thatPallay did not disagree with Littrell, but rather, interpreted and applied it. Appellant has not presented any reason, either legal or equitable, for reversing the Pallay decision that was released less than two years ago. If Appellant had been forced by federal law to pay a Medicare lien arising from someone else's injuries, thenLittrell would likely apply and the Medicare lien might act to increase his UIM benefits. The reality though, is that Appellant incurred his own medical costs due to a car accident, some or all of which were paid by *Page 13 
Medicare, and then received a $100,000 insurance settlement from the tortfeasor. If Medicare had not paid his medical bills, he would have had to pay them from some other source, whether out of his own pocket or by using the settlement money. His UIM insurance guaranteed that he would have up to $100,000 to cover his injuries from the auto accident. Since Appellant received $100,000 from the tortfeasor, Nationwide is not contractually bound to provide further UIM benefits. This is not the type of situation envisioned by Littrell or Pallay for which a Medicare lien may be excluded from the "amounts available for payment" calculation in determining UIM coverage, and therefore, the trial court was correct in denying UIM coverage and granting partial summary judgment to Appellee. The assignment of error is overruled and the judgment of the Mahoning County Court of Common Pleas is affirmed. The matter is hereby remanded to deal with Appellant's second claim that remains pending in the trial court.
 Vukovich, J., concurs. DeGenaro, P.J., concurs. *Page 1