JOURNAL ENTRY and OPINION
{¶ 1} Appellants Mary and Gerald Bauer, individually and as parents to minor Dannielle Bauer, appeal the trial court's granting of summary judgment in favor of appellee Integon General Insurance Corporation ("Integon"). The Bauers set forth the following errors for our review:
"I. The amounts available for payment to Dannielle and Mary from liability insurance are less than their UM/UIM limits, thus, they are entitled to UM/UIM Benefits."
"II. Alternatively, the amounts available for payment to Mary under the tortfeasor's policy were less than the UM/UIM limits of her policy with Integon and, therefore, she is entitled to UM/UIM benefits."
"III. Any policy language that purports to offset or reduce the availability of UM/UIM benefits is void."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.
 {¶ 3} The facts are not in dispute. On February 27, 1996, Gerald and Dannielle Bauer were riding in a car operated by Mary Bauer. Mary Bauer made a left turn in front of a car operated by Edward Groves, causing a collision. All three Bauers were injured.
 {¶ 4} At the time, Mary Bauer had an automobile insurance policy with Integon, which provided bodily injury liability limits of $12,500 per person and $25,000 per accident. The Integon policy provided the same limits for UM/UIM coverage.
 {¶ 5} Gerald and Dannielle Bauer each made a claim against Mary Bauer, claiming her actions contributed to the accident. Integon paid $12,500 each to Gerald and Dannielle Bauer, totaling $25,000, which represents the aggregate liability policy limit.
 {¶ 6} All of the Bauers also asserted claims against the other driver, Edward Groves. Mr. Groves had in effect a policy of automobile insurance with Progressive Insurance Company, which provided bodily injury liability limits of $12,500 per person and $25,000 per accident. Progressive paid the aggregate $25,000 liability limit to the Bauers, which consisted of $12,500 to Dannielle Bauer and $6,250 each to Gerald and Mary Bauer.
 {¶ 7} The Bauers also asserted claims against a third driver, Jack Holman. While Mr. Holman's role in the accident is unclear, State Farm paid $50,000 to the three Bauers jointly.
 {¶ 8} Thereafter, the Bauers made a claim for UM/UIM benefits under Mary Bauer's policy with Integon. The Integon policy contains UM/UIM coverage provisions with limits of $12,500 per person and $25,000 per accident. Integon denied their claim, asserting that it already paid the $25,000 aggregate liability limit of the policy. The Bauers contended, however, that the aggregate amount is subject to United Health Care's medical liens of $191,995.75 for Dannielle's medical care and $5,937.15 for Mary's medical care.
 {¶ 9} The Bauers filed a complaint asserting a claim for declaratory relief against Integon, requesting a declaration of the rights and responsibilities of the Bauers and Integon under the policy regarding setting off the medical liens. Integon moved for summary judgment. The trial court granted summary judgment, concluding the Bauers were not entitled to any UM/UIM benefits under the policy because they had already been paid the aggregate policy limit of $25,000 under the liability portion of the policy.
 MOTION TO DISMISS APPEAL {¶ 10} Prior to addressing the Bauers' appeal, we will address Integon's argument that this court lacks jurisdiction to consider the appeal because it was untimely filed.
 {¶ 11} The prior procedural history of the appeal indicates that this court dismissed the Bauers' first attempt to appeal the trial court's award of summary judgment for lack of a final appealable order because claims were still pending.[1]
 {¶ 12} Subsequently, the Bauers settled and dismissed their claims against Jack Holman. As a result, the Bauers and Holman entered into a signed joint dismissal of the pending claim, in which they stated, "the above captioned matter is hereby settled and dismissed, with prejudice. Costs to be paid by Defendant, Jack Holman." When the Bauers again attempted to appeal, this court dismissed the appeal, because we concluded the entry indicated the matter was dismissed in its entirety.[2] However, the Bauers had not settled and dismissed the claim against Integon. In fact, Integon had not signed the dismissal entry.
 {¶ 13} The Bauers motioned the trial court pursuant to Civ.R. 60(A) to correct the journal entry to properly reflect that only the claim against tortfeasor Jack Holman had been dismissed. As a result, the trial court entered a nunc pro tunc entry stating the July 22, 2004 judgment entry should be corrected to reflect:
"Plaintiffs' claims against defendant Jack Holman are settled. The parties are to submit a more specific judgment entry."
 {¶ 14} Thereafter on January 31, 2005, the parties submitted a joint dismissal entry signed by both parties indicating explicitly that the matter against Jack Holman, only, was settled and dismissed. It was from this last judgment entry that the Bauers filed their appeal.
 {¶ 15} Integon contends the time for appeal commenced with the July 22, 2004 judgment entry because the December 23, 2004 nunc pro tunc order did not toll the time for appeal. We agree the trial court's nunc pro tunc entry did not toll the time for appeal. However, we do not agree that the Bauers are prohibited from appealing.
 {¶ 16} The July 22, 2004, judgment entry did not settle and dismiss the Bauers' claims against Integon. The entry was a joint settlement and dismissal entry. Civ.R. 41(1)(b) requires the parties to file a joint stipulation of dismissal, which is signed by all parties involved. The July 22, 2004 journal entry was only signed by Jack Holman and the Bauers. Integon did not sign the entry. Therefore, the dismissal did not apply to Integon.
 {¶ 17} Therefore, this court erroneously dismissed the prior appeal based on the language in the entry stating that the "above captioned case is hereby settled and dismissed." This was not true because the Bauers had not dismissed the claim against Integon, as reflected by the fact Integon had not signed the settlement entry.
 {¶ 18} It was not until the trial court issued its nunc pro tunc entry that it was clarified the dismissal only pertained to Holman and did not include the Bauers' claims against Integon. Therefore, the Bauers' entered into a new signed stipulated entry on January 31, 2005, which narrowed the effect of the dismissal to reflect only their claims against Holman were settled. Because our prior dismissal of the Bauers' timely appeal, was in effect erroneous, we conclude we have jurisdiction to consider this appeal. Therefore, Integon's motion to dismiss is denied.
 STANDARD OF REVIEW {¶ 19} We review an appeal from summary judgment under a de novo standard of review.[3] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[4] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion which is adverse to the non-moving party.[5]
 {¶ 20} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[6] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[7]
 EFFECT OF SUBROGATION LIEN ON UM/UIM COVERAGE {¶ 21} In their first assigned error, the Bauers contend that the health insurance subrogation liens reduce the amount of money they received from Integon under the liability portion of the policy, and, thus allows them to recover from the UM/UIM portion. The Bauers contend the amount "available to them" under the liability portion is less than $25,000 once the subrogation liens are deducted from the aggregate amount. Integon contends the Bauers are not entitled to reduce the amount of the liens because they resulted from their own medical expenses.
 {¶ 22} The Integon policy clearly provides that payment available under the underinsured provision must be reduced by payment made under the liability provision. It states in pertinent part:
"Any amount otherwise payable for damages under this coverage [uninsured or undersinsured motorist coverage] shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A [liability coverage]."[8]
 {¶ 23} This language paraphrases the setoff language in R.C. 3937.18(C), formerly R.C 3937.18(A)(2).
 {¶ 24} The Ohio Supreme Court has held that for purposes of setting off the tortfeasor's liability coverage against uninsured motorist coverage limits, R.C. 3937.18(A)(2) requires "a comparison of the amounts that are actually accessible to the claimant from the tortfeasor's automobile liability insurance carrier and the claimant's own underinsured motorist coverage."[9]
 {¶ 25} The Bauers contend the money paid by Integon to Dannielle, and the amount paid by Progressive to both Dannielle and Mary, are not actually "accessible" to them, because those benefits are subject to the medical liens for Dannielle's and Mary's medical care. Integon contends the aggregate amount is not reduced by the liens because the expenses were incurred for the Bauers' medical care. Both parties rely on the Ohio Supreme Court's decision of Littrell v. Wigglesworth[10] in support of their respective arguments.
 {¶ 26} In Littrell, the Court considered "whether the limits of a claimant's underinsured motorist coverage as compared to the limits of the tortfeasor's automobile liability coverage or whether they are compared to the amounts actually received by a claimant from the tortfeasor's liability policy." The Court held:
"Expenses and attorney fees are not part of the setoff equation. Such fees are an expense of the insured and should not act, in order to increase underinsured motorist benefits, to reduce the amounts available for payment from the tortfeasor's automobile liability carrier. Conversely, a statutory subrogation lien to Medicare should be considered when determining the amounts available for payment from the tortfeasor. Such a lien is not an expense of an insured."[11]
 {¶ 27} The Bauers contend that this holding mandates that medical subrogation liens by a healthcare provider for treatment of injuries related to the accident, are to be setoff from benefits paid for liability, and cites to the Fourth district court's decision in Ruckerv. Davis[12] for support.
 {¶ 28} Notwithstanding the Rucker opinion, other courts, including this one, have limited the application of Littrell to the factual context within which it arose.[13] Littrell involved a wrongful death action in which the insureds were three family members of a deceased automobile victim. The Medicare lien was for medical services rendered to the victim rather than to the three insureds themselves. Based on these facts, the Seventh, Second, and our own Eighth District, have held that a setoff is not warranted for a statutory medical lien incurred as a result of medical services rendered to the insured himself.[14] These cases distinguish the fact that the medical lien in Littrell was not incurred for the benefit of the insureds, but for the deceased, and thus limit the application of the Supreme Court's holding to those facts.
 {¶ 29} Rucker, the case the Bauers cite to in interpreting Littrell,
failed to distinguish between liens for medical services rendered to the insured as opposed to liens for medical services rendered to the decedent.[15] Accordingly, we decline to follow Rucker and choose instead to follow this court's decision in Mathis and the Seventh and Second District opinions of Broughton and Clark, respectively.
 {¶ 30} Therefore, Dannielle's and Mary's subrogation liens for medical expenses are not setoff from the aggregate liability amount because these expenses were incurred for the medical care of Mary and Dannielle Bauer, who are insureds under Integon's policy. Accordingly, the Bauers' first assigned error is overruled.
 UM/UIM BENEFITS BASED ON TORTFEASOR GROVES' PAYMENT {¶ 31} In the second assigned error, Mary Bauer argues that, excluding consideration of the Littrell decision, she is at least entitled to underinsured motorist benefits under Integon's policy. She argues that because she only received $6,250 from Progressive Insurance for tortfeasor Groves' involvement in the accident, she is entitled to an additional $6,250 under Integon's underinsured coverage, which provides for $12,500/person in underinsured coverage. We disagree.
 {¶ 32} This argument does not alter the fact that Integon has already paid its aggregate liability limit of $25,000 for Mary Bauer's liability for Dannielle's and Gerald's injuries. Integon's policy states:
"Limit of Liability
"* * * The limit of liability shown in the Declarations for each accident is the most we will pay as a result of any one auto accident regardless of the number of:
1. Insureds;
2. Claims made or causes of action that arise;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident."
 {¶ 33} The declarations page shows a limit of $25,000 per accident.
 {¶ 34} Integon had paid the maximum liability limit of $25,000. Therefore, there is no underinsured motorist coverage available under this policy for this accident. Additionally, Mary Bauer was awarded a portion of the $50,000 received from the Bauers' settlement with Jack Holman, which she fails to add to the amounts she has collected. Accordingly, the Bauers' second assigned error is overruled.
 POLICY LANGUAGE REQUIRING LIABILITY SETOFF IS VOID {¶ 35} The Bauers contend in their third assigned error that the setoff provision in Integon's policy, requiring the reduction in the amount of UM/UIM coverage by amounts paid under the liability provision, is void as a matter of law because it violates public policy and the purpose underlying R.C. 3937.18.
 {¶ 36} As the Ohio Supreme Court in Clark v. Scarpelli[16] held, the original purpose of underinsured motorist coverage was to ensure that persons injured by an underinsured motorist would receive at least the same amount of total compensation as they would have received had they been injured by an uninsured motorist.[17]
 {¶ 37} The Court also emphasized that pursuant to R.C. 3937.18, underinsured motorist coverage was not intended to be excess insurance to the tortfeasor's liability coverage and that the statutory language indicated that a person injured by an underinsured motorist should never be afforded greater coverage than that which would be available had the tortfeasors been uninsured.[18]
 {¶ 38} In the instant case, Integon paid its $25,000 aggregate limits of liability coverage to Gerald and Dannielle Bauer. Had no liability coverage been available to the Bauers, they could have received no more than $25,000 in uninsured motorist coverage from Integon. Because the Bauers have already received the $25,000 from Integon, along with a total of $75,000 from Progressive and State Farm, no underinsured motorist coverage is available because to do so, would allow them to receive more benefits than if the tortfeasors were uninsured, which is against the policy underlying R.C. 3937.18. Accordingly, the Bauers' third assigned error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., and Corrigan, J., Concur.
[1] Bauer v. Liberty Mut. Ins. Co. (June 10, 2004), Cuyahoga App. No. 84322.
[2] Bauer v. Liberty Mut. Ins. Co. (Dec. 27, 2004), Cuyahoga App. No. 84332.
[3] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[4] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[5] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
[6] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[7] Id. at 293.
[8] Integon Policy, Part C-Uninsured Motorist Coverage, Limit of Liability, at page 7.
[9] Clark v. Scarpelli, 91 Ohio St.3d 425, 2001-Ohio-39.
[10] 91 Ohio St.3d 425, 2001-Ohio-87.
[11] Id. at 434.
[12] 4th Dist. No. 02CA2670, 2003-Ohio-3192.
[13] Mathis v. American Commerce Ins. Co. Cuyahoga App. No. 83433,2004-Ohio-2021; Mid-American Fire Cas. Co. v. Broughton,154 Ohio App.3d 728, 2003-Ohio-5305; Clark v. Boddie, 2nd Dist. No. 20339, 2004-Ohio-2605.
[14] Id.
[15] Clark v. Bodie, supra at ¶ 12.
[16] Supra.
[17] Id. at 275.
[18] Id. at 276.