TEJEDA, Appellee and Cross–Appellant,

v.

TOLEDO HEART SURGEONS, INC., et al., Appellants and Cross–Appellees.

[Cite as *Tejeda v. Toledo Surgeons, Inc.*, 186 Ohio App.3d 465, 2009-Ohio-3495.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–07–1242.

Decided July 17, 2009.

466

Eugene F. Canestraro, for appellee and cross-appellant.

Karen A. Novak and Diane J. Knoblauch, for appellants and cross-appellees.

HANDWORK, Judge.

{¶ 1} In this appeal from a judgment of the Lucas County Court of Common Pleas, we are asked to determine whether the trial court erred in finding that appellee and cross-appellant, John Tejeda, P.A. ("appellee"), is entitled to the

payment of one year's salary, plus prejudgment interest, under an employment contract made between appellee and appellants and cross-appellees, Toledo Heart Surgeons, Inc. ("THS"), and Xavier R. Mousset, M.D., a cardiac surgeon, as an individual guarantor ("appellants"). Appellee also filed a cross-appeal from the trial court's judgment. The facts material to our disposition of this case are as follows.

{¶ 2} Appellee is a certified physician assistant in the state of Ohio. He originally worked for Cardiac Surgeons of Northwest Ohio ("CSNO"). Dr. Mousset was also a part of that group. In 1998, Dr. Mousset left CSNO and formed his own practice, specifically, THS. Dr. Mousset was the sole officer and shareholder of his corporation. In that same year, both CSNO and THS were each awarded two-year contracts allowing them to perform cardiac surgery at Toledo Hospital.

{¶ 3} On June 13, 1998, appellee entered into an employment agreement with THS and Dr. Mousset, individually and as guarantor of THS, for a term of three years, that is, until June 30, 2001. This agreement reads:

{¶ 4} "Section 2. *Capacity and Duties:*

{¶ 5} "Employee shall be employed in the capacity of a physicians assistant, duly licensed by the State of Ohio. Employee shall perform such other duties and responsibilities as are assigned to him by Employer so long as such different duties are consistent with Employee's position and level of authority as a licensed physicians assistant. Employee shall devote his full time, skill, best efforts and attention to all of his duties hereunder.

{¶ 6} "Section 3. *Term:*

{¶ 7} "a. This Agreement shall initially be effective for a period of three (3) years commencing on July 1, 1998, provided Employee has current licenses and certifications necessary or appropriate to enable Employee to fulfill his duties hereunder * * *.

{¶ 8} " * * *

{¶ 9} "Section 4: *Compensation:*

{¶ 10} "a. During the first one (1) year term, the Employer shall pay the Employee a salary of One Hundred Seventy–Five Thousand Dollars ($175,000) per year, payable in accordance with Employer's regular payroll policies; during the second and third year terms, Employer shall pay Employee an annual salary of One Hundred Eighty Thousand Dollars ($180,000).

{¶ 11} " * * *

{¶ 12} "d. The annual salary is guaranteed by Toledo Heart Surgeons, Inc. and Dr. Xavier Mousset, M.D., individually for the entire three (3) year term

unless the Employee is terminated for cause (as identified in paragraph 15). If Employer terminates Employee or ceases doing business during the three (3) year term, Toledo Heart Surgeons, Inc. and Dr. Xavier Mousset, individually guarantee Employee's salary for one (1) year commencing on the date of termination. * * *. If employer terminates Employee without cause, or Guarantor dies, Employee shall receive payment of his salary in a lump sum within 90 days of the termination, cessation, or death."

{¶ 13} Under Section 15 of the agreement, THS could immediately terminate appellee's employment for cause if appellee accepted employment or committed "any other act or omission that, pursuant to law," placed "restrictions or limitations on his continued rendering of professional services as a Physicians Assistant in the State of Ohio."

{¶ 14} At the time appellee entered into the foregoing contract, he was acting as a "consultant" to Toledo Hospital with regard to its physician-assistant program and had performed this service since 1996. The trial court found that Dr. Mousset was unaware of appellee's work with Toledo Hospital prior to and during appellee's employment with THS.

{¶ 15} After THS's two-year contract with Toledo Hospital was finished, the hospital elected to give CSNO exclusive rights to perform cardiac surgeries at the hospital. This prompted THS to lay off several employees, which led Dr. Mousset to encourage his employees to look for other work. At this time, appellee began searching for work, and came into contact with Jostra Bentley ("JB"). Around October 27, 2000, appellee signed an agreement with JB that stated that he was set to begin work on December 1, 2000. Appellee testified that he did not actually begin working for JB until December 10, 2000.

{¶ 16} Several employees testified that around the time appellee began looking for other employment, he missed his rounds and was often late. There was also an incident where appellee missed a surgery where he was supposed to assist Dr. Levy, the other surgeon in THS. However, there were no documented complaints or grievances filed against appellee.

{¶ 17} Although Dr. Mousset attempted to come to a new agreement with Toledo Hospital in order to once again perform cardiac surgeries there, by October 2000, he began searching for a new location. In November 2000, Dr. Mousset accepted a position in Erie, Pennsylvania, and asked appellee to go with him. Appellee, citing a desire to keep his family in Toledo, rejected the offer. Sometime around December 15, 2008, Dr. Mousset moved to Erie.

{¶ 18} Appellee filed suit June 8, 2004, and an amended complaint June 14, 2004, for breach of contract. Appellants filed an answer and counterclaim August 11, 2004, alleging appellee was the breaching party and seeking damages.

Appellants amended their counterclaim and filed amended affirmative defenses on July 19, 2006. On November 7, 2006, after a trial to the bench, the Lucas County Court of Common Pleas entered judgment awarding $132,807.68 in damages to appellee and dismissed all counterclaims. Also, on June 21, 2007, the trial court ruled that appellee was entitled to prejudgment interest. Appellants filed a notice of appeal on July 18, 2007, alleging the following assignments of error:

{¶ 19} "First Assignment of Error:

{¶ 20} "The trial court erred when it found for appellee because appellants did not terminate appellee without cause or cease to do business.

{¶ 21} "Second Assignment of Error:

{¶ 22} "The trial court erred when it awarded damages to the appellee because the appellee breached the contract by failing to fulfill his duties and obligations under the contract, by accepting other employment and by his independently [sic] termination of the contract when he secured other employment.

{¶ 23} "Third Assignment of Error:

{¶ 24} "The trial court erred when it granted prejudgment interest because appellee is not entitled to prejudgment interest."

{¶ 25} Appellee filed a notice of cross-appeal on July 23, 2007, alleging the following assignments of error:

{¶ 26} "First Assignment of Error:

{¶ 27} "The trial court erred at law, in mandating an 'off set' against the sum found due Tejeda—$180,000.00, since the employment contract does not permit the reduction, the parties had not previously agreed to the credit/reduction and there is no justification, statutorily or equitably, for the charge/set off."

{¶ 28} "Second Assignment of Error:

{¶ 29} "The Trial Court Findings of Fact that: a.) John Tejeda began working for another company called Jostra Bentley on November 1, 2000 and that, b.) Tejeda was 'employed' by the Toledo Hospital are not supported by any trial evidence and are erroneous."

{¶ 30} Appellants are incorrect in arguing the proper standard of review for their first and second assignments of error is de novo. While it is true that questions regarding the existence of a contract and its meaning are reviewed de novo, we are not called upon to answer such questions. *Saunders v. Mortensen,* 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9. Rather, appellants through their first and second assignments of error ask this court to determine the factual question of who breached the contract. Therefore, we review this case to

ascertain whether the trial court's findings in favor of appellee were against the manifest weight of the evidence.

{¶ 31} Appellants' first two assignments of error and appellee's second assignment of error are intertwined. Therefore, for the purpose of clarity, we will address appellants' first and second assignment of error at the same time, along with appellee's second assignment of error. In reviewing appellee's second assignment of error, the proper standard of review is whether the trial court's findings were against the manifest weight of the evidence.

{¶ 32} This court must operate under the presumption that the findings of the trier of fact were correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79–80, 10 OBR 408, 461 N.E.2d 1273. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, paragraph one of the syllabus.

{¶ 33} Appellants argue that Dr. Mousset and THS did not breach the contract with appellee. They claim appellee was never terminated by Dr. Mousset and that THS never ceased to do business. Instead, appellants state that appellee knew there was a possibility of relocation at the time of the employment agreement's inception and point out there was no language in the employment agreement that declared that THS operated exclusively in Toledo. As a result, appellants claim appellee had a duty to follow Dr. Mousset to Erie. Appellants argue that appellee was in breach because of this lack of performance. Also, appellants claim that appellee breached the employment agreement by missing rounds and being tardy, working for Toledo Hospital without the knowledge of Dr. Mousset, and working for JB prior to the end of his employment with THS.

{¶ 34} Appellee, on the other hand, argues both that THS ceased to do business and that he was terminated before the end of the contractual term. Appellee claims these events triggered the lump-sum portion of the contract, and that Dr. Mousset and THS were in breach by failing to pay the lump sum within 90 days after cessation or termination. Also, appellee argues that the lack of documented proof of negligent performance of his duties, along with Dr. Mousset's offer to move him to Erie, establish that he did not breach the employment agreement. Finally, appellee maintains that the trial court's findings that he began work at JB on November 1, 2000, and that he was an "employee" for

Toledo Hospital as opposed to an "independent contractor" were against the manifest weight of the evidence.

{¶ 35} In its findings of fact and conclusions of law, the trial court presented its reasons for finding that Dr. Mousset and THS breached the employment agreement, saying:

{¶ 36} "Defendants, in breach of the employment agreement with Tejeda (Plaintiff), refused to continue to pay Plaintiff because of the heavy financial burden caused by the loss of the underlying contract with Toledo Hospital—none of which is connected to, or the result of, any action, activity, inactivity, failure or breach of the Plaintiff. An employer cannot terminate a contract of employment on the ground that adverse conditions created financial difficulties for the employer."

{¶ 37} The lump-sum provision of the contract could be triggered in one of two ways: if THS ceased to do business or if appellee was terminated. As the aforementioned paragraph shows, the trial court found that appellee had been involuntarily terminated and that appellants were in breach by refusing to pay him one year's salary within 90 days of that termination. We find, giving due deference to the trial court's findings of fact, that there was some competent, credible evidence upon which the trial court could find that appellee was terminated.

{¶ 38} While appellants never literally told appellee he was fired, their actions acted as constructive notice of his termination. The employment agreement contained no language mandating appellee to move should THS leave Toledo. By relocating to Erie, Dr. Mousset created a situation where appellee was unable to perform essential functions of his job. Appellee, by virtue of his job as a physician assistant, needs supervision from a licensed medical professional in order to perform many of his duties, including surgery. In fact, during testimony Dr. Mousset admitted that when he is not in town appellee cannot continue to work as a physician assistant. Also, while appellants argue that appellee could perform administrative tasks, Dr. Mousset was required to sign off on all of the documents that appellee produced. This evidence shows that, because of Dr. Mousset's own actions, appellee was unable to perform his duties under the employment agreement, and was, therefore, terminated. Thus, we find there was sufficient "competent, credible evidence" offered at trial court to support a finding that appellee had been terminated.

{¶ 39} While the trial court never addressed in its findings of fact and conclusions of law whether THS ceased to do business, we find it clear from the record that for all meaningful purposes, THS ceased to do business when Dr. Mousset left. When Dr. Mousset moved to Erie, he joined a new group of

physicians known as Cultonson Cardiology, Inc. As Dr. Mousset testified, THS never operated in Erie. Even though there were various administrative duties remaining after Dr. Mousset left, we find that for all intents and purposes THS "ceased to do business" as soon as Dr. Mousset moved to Erie. Thus, the lump-sum provision was activated by both appellee's termination and THS ceasing to do business.

{¶ 40} We also find appellants' argument that appellee breached to be without merit. Despite the fact that appellants believe that appellee's nondisclosure of his work for Toledo Hospital constituted a breach, the employment agreement between the parties contained no exclusivity provision that would prevent appellee from taking outside employment. While appellants argue the provision of the employment agreement which states that appellee must "devote his full time, skill, best efforts and attention to all duties hereunder" requires appellee not to accept outside employment, we find this interpretation far too narrow and directly rebutted by other provisions with the agreement. The employment agreement allowed appellee 30 days for vacation and time to attend medical meetings, and stated that he would work no more than 20 weekends during the contractual term. If appellants' interpretation of the "full time" provision is accurate, appellee would not have been allowed to take any time off.

{¶ 41} There was testimony offered at trial showing that appellee had issues with tardiness; however, there was no evidence linking this to his employment with Toledo Hospital. George Vanderhoof, who was the Administrative Director of Surgical and Clinical Support Services during the contested time period, testified that appellee would schedule his duties for Toledo Hospital around his job with THS, and that appellee provided a maximum of three hours per month in his consultant position with Toledo Hospital. We, therefore, agree with the trial court that appellee did not breach the employment agreement through his work for Toledo Hospital.

{¶ 42} We also find there was competent, credible evidence to support the trial court's finding that appellee did not breach due to negligence. The trier-of-fact has the ultimate discretion as to which witnesses are credible. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d at 79–80, 10 OBR 408, 461 N.E.2d 1273. Both parties presented witnesses to testify to the extent of appellee's negligent performance. By ruling in favor of appellee, the trial court apparently found the witnesses who testified in regard to appellee's performance of his work duties to be more credible. As it is not our task to second-guess the trial court's decisions on such matters, we defer to its judgment. We also note that there was no documented evidence as to negligence in appellee's job performance, and find that Dr. Mousset's offer to move appellee to Erie was proof of appellee's fulfillment of

his duties. Therefore, we conclude that appellee did not breach the employment agreement through negligent performance.

{¶ 43} We agree with appellee that there is no competent, credible evidence to support the trial court's finding that appellee began working for JB starting November 1, 2000. The contract between appellee and JB lists his start date at December 1, 2000. Appellee directly testified that he did not begin to work until December 10, 2000, and the only contradictory evidence produced by appellants was suppositions based on appellee's compensation. In our opinion, this finding was likely a clerical mistake on the part of the trial court, especially in light of the fact that both parties agreed that if appellee began working for JB on November 1, 2000, he would have breached his contract. Since the trial court ruled in favor of appellee, it is reasonable to believe this was an inadvertent error. Still, in the interest of clarity and for the reasons mentioned we find that appellee began work for JB on December 10, 2000.

{¶ 44} It is undisputed that Toledo Hospital's decision not to renew THS's contract created economic difficulties for Dr. Mousset. At trial, Dr. Mousset acknowledged that in December 2000, THS was behind on all of its bills and in financial trouble. Since cardiac surgeries accounted for the majority of Dr. Mousset's business, the loss of the contract with Toledo Hospital made relocation a virtual necessity. On cross-examination, Dr. Mousset testified that the real reason he neglected to pay appellee in December 2000 was because the company did not have the resources. We agree with the trial court that this is not an acceptable reason for appellants' failure to perform. Therefore, appellants breached by not paying appellee the lump sum within 90 days as required by the employment agreement.

{¶ 45} Finally, we conclude that the trial court erred by finding appellee was an employee of Toledo Hospital as opposed to an independent contractor. Carol Stormer, the accounts payable manager for ProMedica Health Systems, testified that appellee was an independent contractor when he worked for Toledo Hospital. Appellee also testified to this, and there was no contradictory evidence presented by appellants. While this was also likely an unintentional error, we find that appellee was an independent contractor for Toledo Hospital, not an employee.

{¶ 46} For the aforementioned reasons, we find appellants' first two assignments of error not well taken, and appellee's second assignment of error well taken.

{¶ 47} The next issue raised by appellants is whether the trial court erred in awarding prejudgment interest. The trial court awarded prejudgment interest pursuant to R.C. 1343.03(A), which states:

{¶ 48} "[W]hen money becomes due and payable upon any * * * instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."

{¶ 49} It is not within the trial court's discretion to refuse to award prejudgment interest in claims falling under R.C. 1343.03(A). *Kott Ents., Inc. v. Brady*, 6th Dist. No. L–03–1342, 2004-Ohio-7160, 2004 WL 3017255, ¶ 72. "[I]n determining whether to award prejudgment interest pursuant to * * * 1343.03(A), a court need only ask one question: Has the aggrieved party been fully compensated?" *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 116, 652 N.E.2d 687. "Where a party has been granted judgment on an underlying contract claim for money that is due and payable, that party is entitled to prejudgment interest as a matter of law." *Kott*, 6th Dist. No. L–03–1342, 2004-Ohio-7160, 2004 WL 3017255, ¶ 73. The trial court may only determine when the interest began to run and what the interest rate should be. *Dwyer Elec., Inc. v. Confederated Builders* (Oct. 29, 1998), 3d Dist. No. 3–98–18, 1998 WL 767442.

{¶ 50} Appellants argue that appellee waited too long to file suit and that to award him full prejudgment interest would be unjust enrichment. We disagree. Testimony showed that appellee waited to file suit because he believed that Dr. Mousset would eventually pay him the lump sum. Appellee did not intend to accrue inordinate amounts of interest on his claim; he simply wished to escape litigation. Still, regardless of appellee's intent, there is no authority to back appellants' claim. Instead, we reiterate our position from *Kott* that prejudgment interest must be awarded as a matter of law in contract claims. Id. Based on that precedent, we find that appellee was entitled to prejudgment interest on his breach-of-contract claim as a matter of law. Consequently, we find appellants' third assignment of error not well taken.

{¶ 51} Appellee alleges in the final assignment of error that the trial court erred by using his JB contract to offset damages from the amount due under the THS contract. Since the damages were awarded as a matter of law, the proper standard of review for this court is de novo. In applying the de novo standard, we review the trial court's decision independently and without deference to the trial court's determination. *White v. DePuy, Inc.* (1998), 129 Ohio App.3d 472, 478, 718 N.E.2d 450.

{¶ 52} In limiting appellee's damages, the trial court said it offset the damages appellants owe appellee against the money appellee earned while working for JB and Toledo Hospital. We must first determine whether the trial court applied setoff or recoupment to reduce the damages.

{¶ 53} The Ohio Supreme Court defined setoff as "that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction." *Witham v. S. Side Bldg. & Loan Assn. of Lima* (1938), 133 Ohio St. 560, 562, 11 O.O. 269, 15 N.E.2d 149. The right to setoff exists both at law and in equity. *Walter v. Natl. City Bank of Cleveland* (1975), 42 Ohio St.2d 524, 525, 71 O.O.2d 513, 330 N.E.2d 425. Recoupment, on the other hand, is, "a demand arising from the same transaction as the plaintiff's claim." *Akron Natl. Bank & Trust Co. v. Roundtree* (1978), 60 Ohio App.2d 13, 18, 10 O.O.3d 355, 14 O.O.3d 10, 395 N.E.2d 525. Recoupment is an affirmative defense and, therefore, must be raised during the pleadings or it is waived. *Haddad v. English* (2001), 145 Ohio App.3d 598, 602, 763 N.E.2d 1199.

{¶ 54} " '[Recoupment] does not confess the indebtedness alleged in the complaint, as is understood by a setoff, but its proposition is that the plaintiff's claim is based on a particular contract or transaction and that to entitle the plaintiff to the sum claimed, he must prove compliance with certain obligations of the contract; that he failed to do so; and therefore that the defendant has been so damaged in the transaction that the plaintiff is not entitled to recover.' " *Cauffiel Mach. Co. v. E. Steel & Metal Co.* (1978), 59 Ohio App.2d 1, 6, 13 O.O.3d 41, 391 N.E.2d 743, quoting 20 American Jurisprudence 2d 235, Counterclaim, Recoupment and Setoff, Section 11.

{¶ 55} We agree with both appellee and appellants that the trial court applied recoupment. This situation arose over one transaction, the employment agreement, between the two parties. The trial court lessened the damages due to its findings in regard to appellee's other employment. When viewing this action in light of the definition of recoupment found in *Cauffiel,* it is clear that the trial court used the doctrine of recoupment as opposed to setoff.

{¶ 56} Appellee argues that appellants never pleaded recoupment as an affirmative defense, thereby making it impossible for the trial court to recoup a portion of appellee's damages. Appellants argue that the issue was tried by consent, and therefore the trial court did not err by using recoupment.

{¶ 57} "It is axiomatic that cases are to be decided on the issues actually litigated at trial." *State ex rel. Evans v. Bainbridge Twp. Trustees* (1983), 5 Ohio St.3d 41, 44, 5 OBR 99, 448 N.E.2d 1159. "[C]laims not raised in the trial court may not be raised on appeal." *Hopson v. Ohio Bur. of Workers' Comp.* (1993), 88 Ohio App.3d 196, 200, 623 N.E.2d 667. However, issues not raised in the

pleadings may be tried by the consent, express or implied, of the parties. *State ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d at 41, 5 OBR 99, 448 N.E.2d 1159. Civ.R. 15(B), the rule allowing for implied consent, states:

{¶ 58} "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues."

{¶ 59} Under this rule, "implied consent is not established merely because evidence bearing directly on an unpleaded issue is introduced without objection. Rather, it must appear that the parties understood the evidence was aimed at the unpleaded issue." *State ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d at 46, 5 OBR 99, 448 N.E.2d 1159. If the issue would result in substantial prejudice to a party, it may not be tried by implied consent. Id. at 45, 5 OBR 99, 448 N.E.2d 1159.

{¶ 60} Based on our review of the record, we find no indication that the parties intended to litigate the issue of recoupment by implied consent. While there was evidence that most likely could have been used to prove recoupment, we find it inappropriate to say that both parties understood the evidence was being aimed at the unpleaded issue. Moreover, we find that allowing recoupment would result in substantial prejudice to appellee due to the loss of a considerable portion of his claim. Therefore, for the aforementioned reasons, we find appellee's first assignment of error to be well taken.

{¶ 61} On consideration whereof, this court finds: (1) appellants breached the employment agreement; (2) the trial court improperly applied the doctrine of recoupment; and (3) the trial court erred by holding appellee was an "employee" of Toledo Hospital and that he began work for JB November 1, 2000. The judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded to the trial court for disposition in accordance with this court's decision. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment accordingly.

Singer and Osowik, JJ., concur.