GILLILAND et al., Appellees,

v.

NATIONWIDE PROPERTY & CASUALTY INSURANCE
COMPANY et al., Appellants.

[Cite as *Gilliland v. Nationwide Property & Cas. Ins.
Co.*, 188 Ohio App.3d 621, 2010-Ohio-2512.]

Court of Appeals of Ohio,
Fourth District, Jackson County.

No. 09CA5.

Decided June 1, 2010.

KLINE, Judge.

{¶ 1} Nationwide Insurance Company of America ("Nationwide") appeals the judgment of the trial court awarding partial summary judgment to Tara L. Gilliland and Connor L. Dailey (collectively, "plaintiffs"). The trial court relied on *Rucker v. Davis*, Ross App. No. 02CA2670, 2003-Ohio-3192, 2003 WL 21404107. Nationwide contends that this opinion is erroneous and that we should overturn it. Upon consideration, we agree. Accordingly, we sustain Nationwide's assignments of error and reverse the judgment of the trial court.

I

{¶ 2} On March 28, 2007, plaintiffs were in an automobile collision in Jackson County. The plaintiffs alleged that Roy A. Woods caused the accident when he drove his vehicle in a negligent manner and collided with the plaintiffs' vehicle. Woods died on the same day as the accident, and so the plaintiffs' complaint also named the executor of Woods's estate. In addition, the complaint named Woods's insurance carrier, Nationwide Property & Casualty Insurance Company ("Nationwide Property"), and the complaint also named Nationwide, who insured plaintiffs under a policy issued to Gilliland. This policy is an underinsured-motorist policy. Plaintiffs, in their complaint, demanded that their rights be declared under the underinsured-motorist policy and that judgment be entered against Nationwide in the amount of plaintiffs' damages.

{¶ 3} Woods's insurance provider, Nationwide Property, was dismissed as a party on March 13, 2008. Plaintiffs voluntarily dismissed their claims against Woods's estate with prejudice on March 4, 2009. This left only plaintiffs and Nationwide as parties to the present action. Both plaintiffs and Nationwide filed motions for summary judgment. Nationwide filed a renewed motion for summary judgment (the first motion had been denied) asking the trial court to find that plaintiffs could not recover under their underinsured-motorist policy as a matter of law. Plaintiffs, by contrast, filed a motion for partial summary judgment on the issue of coverage. On May 21, 2009, the trial court issued its judgment entry, which denied Nationwide's motion for summary judgment but granted plaintiffs' motion for partial summary judgment.

{¶ 4} Both parties agreed that the liability limits of the tortfeasor and the limits of plaintiffs' underinsured-motorist policy were both $100,000. Both parties apparently also agree that plaintiffs' medical provider imposed a lien of $34,373.13 on any recovery from the tortfeasor's insurance. The trial court determined that this case was controlled by *Rucker*, 2003-Ohio-3192, 2003 WL 21404107. The parties then entered a final agreed entry that established liability in the amount of $34,373.13.

{¶ 5} Nationwide appeals and assigns the following errors for our review: I. "The trial court committed plain error in its May 21, 2009, Decision and Order and its August 25, 2009, Entry by failing to follow R.C. 3937.18(C) and allowing the Plaintiff to collect more than the available limits of liability coverage." II. "The trial court committed plain error in its May 21, 2009, Decision and Order and its August 25, 2009, Entry by allowing the Plaintiffs to collect more in underinsured motorist coverage than uninsured motorist coverage." III. "The trial court committed plain error in its May 21, 2009, Decision and Order and its August 25, 2009, Entry by not applying the set off doctrine." IV. "The trial court committed plain error in its May 21, 2009, Decision and Order and its

August 25, 2009, Entry by allowing Plaintiff to collect more than she contracted for in underinsured motorist benefits."

## II

{¶ 6} Nationwide's assignments of error require this court to review the trial court's entry granting summary judgment. "Because this case was decided upon summary judgment, we review this matter de novo, governed by the standard set forth in Civ.R. 56." *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, at ¶ 8. All of Nationwide's assignments of error ask us to review the trial court's decision on summary judgment.[1] We therefore shall consider all of them simultaneously.

{¶ 7} Summary judgment is appropriate only when the following have been established: (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C). See also *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411, 599 N.E.2d 786. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the opposing party's favor. *Doe v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 535, 629 N.E.2d 402.

{¶ 8} The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 662 N.E.2d 264, citing *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114–115, 526 N.E.2d 798. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). See also *Dresher* at 294–295, 662 N.E.2d 264.

{¶ 9} In reviewing whether an entry of summary judgment is appropriate, an appellate court must independently review the record and the inferences that can be drawn from it to determine if the opposing party can possibly prevail. *Morehead* at 411, 599 N.E.2d 786. "Accordingly, we afford no deference to the trial court's decision in answering that legal question." Id. at 412, 599 N.E.2d

---

1. However, Nationwide framed all of its assignments of error with "The trial court committed plain error" language. Normally, this would require us to do a civil "plain error" analysis by following the civil plain-error doctrine. See *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099. However, we find that Nationwide preserved this issue for appeal. Thus, a plain-error analysis is not necessary.

786. See also *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809, 619 N.E.2d 10.

{¶ 10} Underinsured-motorist coverage is defined in the Ohio Revised Code as follows: "the underinsured motorist coverage shall provide protection for insureds thereunder for bodily injury, sickness, or disease, including death, suffered by any insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the underinsured motorist coverage." R.C. 3937.18(C). Courts have calculated the amount owed by starting with the policy limit of the underinsured-motorist coverage, and then courts have set off any amount "available for payment to the insured." See *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 744 N.E.2d 719, at syllabus and 279, fn. 3, 744 N.E.2d 719. This language can be confusing as the term "setoff" also has a specific meaning in law not applicable here. See, e.g., *Tejeda v. Toledo Surgeons, Inc.* (2009), 186 Ohio App.3d 465, 2009-Ohio-3495, 928 N.E.2d 1138, at ¶ 53, citing *Witham v. S. Side Bldg. & Loan Assn. of Lima* (1938), 133 Ohio St. 560, 562, 11 O.O. 269, 15 N.E.2d 149. Nonetheless, we shall follow this convention.

{¶ 11} Nationwide asks us to reconsider our decision in *Rucker*. As noted above, both parties agreed that the liability limit of the tortfeasor's insurance policy was equal to plaintiffs' underinsured-motorist policy. Therefore, absent some liability that reduces the amount available for payment, Nationwide would not be liable to plaintiffs, because the entirety of the underinsured-motorist policy is set off by the tortfeasor's insurance policy. Plaintiffs rely on *Rucker* and argue that the medical provider's lien reduces the amount available for payment under the terms of R.C. 3937.18(C). Therefore, plaintiffs contend that the tortfeasor was underinsured to the extent of this lien. Nationwide contends that the medical provider's lien is an expense of the insured and that *Rucker* was erroneously decided. In order to consider *Rucker*, we first consider and explain the Supreme Court of Ohio cases on which *Rucker* relied.

{¶ 12} In *Clark*, the Supreme Court of Ohio held that "[f]or the purpose of setoff, the 'amounts available for payment' language in R.C. 3937.18[C][2] means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." *Clark*, 91 Ohio St.3d 271, 744 N.E.2d 719, at the syllabus. The *Clark* court also held that an insurance company could not use the policy limits of a tortfeasor's liability insurance as a setoff against each

---

2. *Clark* referred to R.C. 3937.18(A)(2), but the relevant language is now found at R.C. 3937.18(C).

individual claimant. Id. at 279–280, 744 N.E.2d 719. Rather, the insurance company could set off only the amount each claimant actually received against that claimant's underinsured-motorist policy limit. Id.

{¶ 13} *Clark* was followed within a short period of time by *Littrell v. Wigglesworth* (2001), 91 Ohio St.3d 425, 746 N.E.2d 1077. *Littrell* was actually a series of cases presenting different fact patterns that the Supreme Court of Ohio ruled on in one combined opinion. Id. at 426–428, 746 N.E.2d 1077. Of these cases, the relevant one for our purposes is *Karr v. Borchardt*. The nature of the action was one for wrongful death and survival claims. Id. at 428, 746 N.E.2d 1077. The relevant limitation on the policy of the tortfeasor was a $100,000 per person limit, but any recovery was subject to a Medicare lien. Id. at 433–434, 746 N.E.2d 1077. Before considering the Medicare lien, each of the claimants received a pro rata share of the $100,000 payment, which was $20,000 each. Id. Considering only the policies, the Supreme Court of Ohio held that the $20,000 figure was the amount available for payment within the meaning of current R.C. 3937.18(C). Id. at 434, 746 N.E.2d 1077. The court also stated that "expenses and attorney fees are not part of the setoff equation. Such fees are an expense of an insured and should not act, in order to increase underinsured-motorist benefits, to reduce the 'amounts available for payment' from the tortfeasor's automobile liability carrier. Conversely, a statutory subrogation lien to Medicare should be considered when determining the amounts available for payment from the tortfeasor. Such a lien is not an expense of an insured." Id. Thus, the *Littrell* court held that the $20,000 amount available for payment should be further reduced by each claimant's pro rata share of the Medicare lien. Id.

{¶ 14} It is crucial to note that the language of the *Littrell* court indicates that the subrogation lien to Medicare was not incurred by the claimants. Rather, this is a cost the decedent incurred that was then applied against the individual claims of the statutory wrongful-death beneficiaries. Medicare subrogation liens are quite broad and will cover recoveries to the "individual or any other entity." Section 1395y(b)(2)(B)(iv), Title 42, U.S.Code.

{¶ 15} We now turn to our decision in *Rucker*. In *Rucker*, we held that under the precedent of *Littrell*, a medical lien placed on a recovery decreased the amount available for payment and so could not be used to set off the amount owed under the underinsured-motorist policies. *Rucker*, 2003-Ohio-3192, 2003 WL 21404107, at ¶ 17, 19. The medical lien in *Rucker* was based on medical services provided to the plaintiff, and the plaintiff was the only beneficiary of any relevant underinsured-motorist policies. Id. at ¶ 3–4, 17.

{¶ 16} In the present case, we find the facts indistinguishable from *Rucker*. Nationwide asks us to overturn our prior decision in *Rucker*. Nationwide contends that *Rucker* is erroneous because in this case the tortfeasor's liability

insurance equaled plaintiffs' underinsured-motorist coverage. And the Ohio General Assembly intended for underinsured-motorist coverage to be available only when the limits of coverage available are less than the limits of a plaintiff's underinsured-motorist coverage. Nationwide also argues that *Clark* and *Littrell* are distinguishable from *Rucker* and the present case. Nationwide notes that no other Ohio district court of appeals that has considered *Rucker* has followed it.

{¶ 17} After consideration, we find that *Rucker* is erroneous for four reasons. First, the medical liens both in the present case and in *Rucker* are distinguishable from *Littrell* in material respects. In both the present case and *Rucker*, the lien relates to medical services provided to the plaintiff. However, in *Littrell*, 91 Ohio St.3d 425, 746 N.E.2d 1077, the wrongful-death statutory beneficiaries' recovery was diminished based on medical services provided to the deceased rather than each claimant. *Littrell*, then, is similar to those cases where there are multiple claimants, much like *Clark*. In *Littrell*, as in *Clark*, the pot of available funds was diminished because the same pot must be used to pay off other claimants. While in the present case, the pot is simply diminished because of expenses that the claimant here incurred. We note that the *Littrell* court expressly stated that expenses incurred by the insured do not reduce the amount available for payment within the meaning of current R.C. 3937.18(C). *Littrell* at 434, 746 N.E.2d 1077.

{¶ 18} Second, *Rucker* would provide the plaintiff here with a windfall. Suppose for a moment that the tortfeasor in this case was uninsured. Then, as Nationwide argues, plaintiffs would be limited to the amount of the uninsured-motorist coverage. To hold otherwise would be to determine that underinsured-motorist coverage is in effect excess coverage to uninsured-motorist insurance, and the Ohio General Assembly has expressly prohibited this result. R.C. 3937.18(C) ("Underinsured motorist coverage is not and shall not be excess coverage to other applicable liability coverages"); *Littrell*, 91 Ohio St.3d at 429, 746 N.E.2d 1077. Plaintiffs do not appear to contest this.

{¶ 19} The Supreme Court of Ohio has described the mandate for underinsured-motorist coverage as follows: " 'Underinsured motorist coverage was first required by statute after the legislature discovered the "underinsurance loophole" in *uninsured*-motorist coverage–i.e., persons injured by tortfeasors having extremely low liability coverage were being denied the same coverage that was being afforded to persons who were injured by tortfeasors having *no* liability coverage. Thus, the original motivation * * * was to assure that persons injured by an underinsured motorist would receive at least the same amount of total compensation that they would have received if they had been injured by an uninsured motorist.' " (Emphasis sic.) *Clark*, 91 Ohio St.3d at 275, 744 N.E.2d 719, quoting *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 389, 18 OBR 440, 481 N.E.2d 272. Thus, the legislature intended to put persons injured

by an underinsured tortfeasor in as good a position as those persons would have been in had the tortfeasor been uninsured. Any payment in excess of that would amount to a windfall.

{¶ 20} Third, the Fourth District Court of Appeals is the only Ohio district court of appeals that has found that a medical lien placed on a judgment, based on services provided to the plaintiff, decreases the amount available for payment under R.C. 3937.18(C). See *Clark v. Boddie*, Montgomery App. No. 20339, 2004-Ohio-2605, 2004 WL 1145874, at ¶ 15; *Bauer v. Liberty Mut. Ins. Co.*, Cuyahoga App. No. 85981, 2005-Ohio-6363, 2005 WL 3220234, at ¶ 27–30; *Pallay v. Nationwide Ins. Co.*, 165 Ohio App.3d 242, 2005-Ohio-5932, 846 N.E.2d 58, at ¶ 59.

{¶ 21} Fourth, the reasoning of *Rucker* would result in the unequal treatment of claimants based on whether or not a creditor had attached a lien to the judgment. For instance, in this case, plaintiffs contend that the amount available for payment from the tortfeasor should be reduced because of a medical lien attached to any recovery from the tortfeasor. However, if the medical provider had waited until plaintiffs had received their payment from the tortfeasor, then the amount available for payment would not be reduced by any lien (leaving $100,000 available for payment). Under these circumstances, Nationwide would be able to set off the entire $100,000 against the plaintiffs' underinsured-motorists policy. We see no basis in the statute to indicate that the Ohio General Assembly intended such an odd result.

{¶ 22} For the foregoing reasons, we find that our previous decision in *Rucker*, 2003-Ohio-3192, 2003 WL 21404107, is erroneous. Accordingly, we sustain Nationwide's assignments of error, reverse the judgment of the trial court, and remand this cause for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

McFARLAND, P.J., and HARSHA, J., concur.